THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* THE AMERICAN BELL TELEPHONE COMPANY, Appellant.

|117  241|
|138  546|

The question whether a foreign corporation is " doing business within this state," within the meaning of the act providing for the taxation of certain corporations (Chap. 542, Laws of 1880, as amended by chap. 361, Laws of 1881, and chap. 501, Laws of 1885), is to be determined from the actual character of the business carried on, not from the existence of powers unexercised reserved to it in contracts with other corporations, or of any natural or contractual right to carry on business here.

Defendant, a Massachusetts corporation, chartered, located and doing business in that state, is authorized by its charter to manufacture, sell, use and license others to use telephones "and other apparatus and appliances pertaining to the transmission of intelligence by electricity." It leased to, and licensed the use of telephones, by certain corporations in this state; upon the conditions and regulations contained in contracts between the parties. These contracts were executed in Boston. By them the entire receipts for the use of the telephone facilities furnished in this state are paid to the licensees, and they constitute the entire income and earnings accruing to defendant; the rentals or royalties due to it are payable in Boston and the telephones are delivered to the licensees at defendant's office or factory in that city. The business as conducted by the local companies, in addition to the telephones, etc., so furnished, requires the use of by each, and it obligates itself to furnish an expensive plant, poles, wires, etc., and requires the employment of numerous agents and employes, calling for a large capital, and the profits of the business belong to it. Defendant is largely instrumental in procuring the organization of the local companies, and generally has subscribed largely to their capital stock. Under the contracts the amount of royalties to be paid defendant is controlled in certain instances by a percentage on the amounts received by the licensees. In case of default in the payment of royalties, in some instances, defendant is authorized to collect in the name of the local company so much of dues owing to it by its customers as will pay the deficit, and in case of default in supplying telephone facilities to customers, defendant may take possession of the plant and carry on the business. Certain restrictions upon the mode of using telephones are contained in the contracts to protect defendant's patents and general interests. Defendant is obligated to furnish to the licensees telephones when called for. *Held*, that defendant was not carrying on business in the state within the meaning of said act; but that the business was carried on by the local companies in their own right, not in any just sense as agents for defendant; and that, therefore, defendant was not liable to taxation under said act.

The contracts contained provisions requiring leases made by the local companies for the use of telephonic instruments to the patrons of "private lines" to be made in defendant's name. This was done to protect defendant's interest in its patents. The royalties and dues were collectible by the local companies, which were made responsible to defendant therefor. They also owned the plant, lines, etc., required for this business, and had control of it, and, within reasonable limits, of the compensation derived therefrom; the rentals, although in form made payable to defendant, are beneficially the moneys of the local companies. *Held,* that this did not constitute the local companies agents simply for defendant in respect to such business.

The business of a corporation can in no legal sense be said to be that of its individual stockholders.

The owner of a patented article, who has simply licensed or leased the use of it to another for the purpose of carrying on a trade or business, may not be made liable to taxation upon the theory that he is carrying on the business.

*It seems* that, conceding defendant is liable to taxation upon a portion of capital, it would be incorrect to apportion its whole capital according to the proportionate number of telephones used in the several states; as it appears that the greater portion of such capital is invested in its patents and plant in Massachusetts.

(Argued October 17, 1889; decided November 26, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, in favor of plaintiff, entered upon an order made May 24, 1889, directing judgment upon a case submitted under the Code of Civil Procedure (§§ 1279–1281).

The questions presented and the facts appearing in the case, so far as material, are stated in the opinion.

*James C. Carter* for appellant. For one person to supply the means to another with which to do business is not the doing of that business by the former. (*U. S.* v. *A. B. T. Co.,* 29 Fed. Rep. 17.) Wherever it appears that in the agreement between two parties who are alleged to be partners what one receives is intended to be — whatever may be the language employed — measured by a certain part of the profits, the agreement does not constitute a partnership, but simply creates a relation of debtor and creditor. This is so even where the

language is that the party is to receive a certain part of the "profits" of the business. (*Richardson* v. *Hughitt*, 76 N. Y. 55.) The provision in the contracts for extra territorial lines for the payment of a certain part of the gross receipts to the Boston company is intended merely to fix the amount of a sum which is due by way of royalty for the use of patent-rights and as a debt from the local company to the Boston company. (*Patterson* v. *Blanchard*, 5 N. Y. 186, 191.) If it should be thought that there are some things in the way of business done by defendant in this state, they should be held as merely incidental to its business done elsewhere, and not as constituting any part of its business in any proper sense of that term. (*People* v. *E. T. Co.*, 96 N. Y. 387; *People* v. *H. S. M. Co.*, 105 id. 76.)

*William A. Poste* for respondent. The statute providing for the taxation is constitutional. It was competent for the legislature to direct that capital stock be made the basis of the tax. (*People* v. *H. Ins. Co.*, 92 N. Y. 328; *People* v. *E. T. Co.*, 96 id. 387, 393, 396.) The expedient resorted to by the defendant of having no office in any state but Massachusetts does not change the inherent merits, even metaphysically. In the estimation of the law a corporation never really travels, and its franchise exists only at the place of its domicile or residence. (*Plympton* v. *Bigelow*, 13 Abb. N. C. 173.) The establishment of an office in the state of New York by the defendant, or the appointment of agents here, *eo nomine*, would not bring the corporation within the state of New York in any more positive legal sense than it is here now. (*Doyle* v. *C. Ins. Co.*, 4 Otto, 535, 540–542.) The acts of 1880 and 1881 of this state do not contemplate a tax upon property at all, and, therefore, not a tax upon capital stock, but the tax is a franchise or business tax — a franchise tax when applied to domestic corporations, and a business tax when imposed upon foreign corporations. (*People* v. *Home Ins. Co.*, 92 N. Y. 328; *People* v. *Spring Valley H. Co.*, Id. 383; *People* v. *E. T. Co.*, 96 id. 387, 393, 396; *People* v. *H. S. Co.*, 105 id.

76 ; *Society* v. *Coite*, 6 Wall. 594 ; *P. Inst.* v. *Mass.*, Id. 611 ; *H. Co.* v. *Mass.*, Id. 633 ; *H. Ins. Co.* v. *New York*, 119 U. S. 129 ; 92 N. Y. 328.) Where no other method of ascertainment of the taxable value of property is practicable, resort will be had to its earning power as a test of that value. (*People ex rel.* v. *Comrs.*, 19 Hun, 460 ; 82 N. Y. 459 ; *People ex rel.* v. *Pond*, 13 Abb. N. C. 1 ; 92 N. Y. 643 ; *People ex rel.* v. *Barker*, 48 id. 70 ; *People ex rel.* v. *Hicks*, 40 Hun, 598 ; *T. Co.* v. *Massachusetts*, 125 U. S. 530, 553.)

Ruger, Ch. J. The controversy in this case is presented by an agreed statement of facts submitted by the parties, to the Supreme Court, under section 1279 of the Code, for its decision. The plaintiffs claim the right to recover taxes from the defendant for five years, between 1881 and 1887, upon some portion of its capital stock, and upon its gross earnings in this state by virtue of the provisions of chapter 542 of the Laws of 1880, as amended by chapter 361 of the Laws of 1881, and chapter 501 of the Laws of 1885. The taxes contemplated by the statutes referred to are a certain percentage upon the amount of the capital stock of " every corporation, joint-stock company, or association whatever, now or hereafter incorporated or organized under any law of this state, or now or hereafter incorporated or organized by or under the law of any other state or country, *and doing business* in this state." (Laws of 1880, chap. 542, § 3 ; Laws of 1881, chap. 361, § 3.)

By chapter 501 of the Laws of 1885 the tax upon the capital stock of corporations, when such stock was only partially employed in this state, was limited to so much only of such capital stock as was thus employed. Section 6 of chapter 542 of the Laws of 1880, and section 6 of chapter 361 of the Laws of 1881, authorize, in addition to other taxes and among other corporations as a tax upon its corporate franchise or business in this state, a certain percentage upon the gross earnings of " every telegraph company or telephone company incorporated under the laws of this or any other state, *and doing business*

in this state." The taxes authorized by these statutes are in addition to the usual and ordinary taxes levied upon property, and were intended to reach and tax the business and franchise only of the corporations designated.

The main question presented is whether the defendant is a corporation "doing business in this state" within the meaning of those words as used in the statutes. Whether the defendant during this period was, in fact, doing business in this state must be determined from the actual character of the business carried on as disclosed by the facts contained in the submission, and not from the existence of any unexercised powers reserved to it by its contracts; for the material question is whether it has, in fact, done business within the state, and, if so, what was its nature, character and extent, and not whether it possesses the natural or contractual right to carry on such business. Some of the leading features of the business under consideration may be concisely referred to as having an important, if not controlling, bearing upon the subject. The defendant is a foreign corporation chartered under the laws of Massachusetts and located and doing business in that state.

It is authorized by its charter "to carry on the business of manufacturing, owning, selling, using and licensing others to use, electric speaking telephones and other apparatus and appliances pertaining to the transmission of intelligence by electricity." Practically its whole business consists in manufacturing, under its patents, and leasing to and licensing the use of telephones by others in various states of the Union. In the state of New York these licensees are corporate bodies formed therein to carry on, in certain defined localities, the business of furnishing telephonic facilities to the citizens of such communities, and they are entitled to the exclusive privilege of doing so under the Bell system. The conduct of the business is carried on under the authority obtained from the Bell Telephone Company upon the conditions and regulations contained in contracts with that company. The entire

receipts for the use of telephonic facilities from the citizens of New York are paid by the customers of the respective local companies to the company of which they are respectively patrons or lessees, and such receipts constitute the entire income and earnings accruing to the Bell Telephone Company from the use and employment of its telephonic instruments in the state of New York. The contracts under which this business is done by the licensees are made at the defendant's office in Boston, and the rentals or royalties due to it are payable monthly, in advance, at that place. The telephones are delivered to each licensee at the general office or factory of the defendant company in Boston as often as requested, and not elsewhere. The licensee transports them, at his own risk and expense, wherever he wishes, and may lawfully use them or furnish them to others for use. The licensee, when he sees fit, may return them to the defendant company at Boston, but so long as he retains them is bound to pay the royalties thereon whether they be used or not. The business so conducted by the local companies requires, in addition to the telephones furnished by the Bell Telephone Company, the use and employment of an expensive plant; the construction and maintenance of extensive lines of poles, wires, switches and switch-boards; the services of numerous agents and employes and the management and control of an extensive business, calling for the employment of a large capital and the incurrence of serious risks in its prosecution. The Bell Telephone Company has no office or officer, agent or employe in the state of New York, unless the local corporations can be so denominated. It has no direct business relations with the public, from whose patronage the income for telephonic facilities is derived, and such income is always collected by and paid to and becomes the property of the local companies. The profits derived from the business thus carried on belong wholly to the stockholders of the respective local companies. In fact, the Bell Telephone Company is largely instrumental in procuring the organization of local companies in New York to transact

the business carried on under their contracts, and has usually subscribed largely to the capital stock of such companies.  As has been observed, this business is conducted under contracts between the Bell Telephone Company and the several local companies, and is usually provided for in three separate contracts adapted to the particular use intended to be made of the telephones leased.  These contracts are quite voluminous and are replete with detailed conditions and restrictions imposed upon the local companies by the Bell Telephone Company in regard to the use to be made of their instruments.  It is unnecessary to refer to these restrictions in detail as they do not affect the problem under consideration.  So far as the provisions of the contracts bear upon this controversy they will be referred to.  The patented instruments used consisted of a transmitter and a receiver, costing about three dollars and a half to manufacture.  The use to which the telephones may be put by the licensees is defined in these contracts as :  First. Contracts for exchange systems.  Second. Contracts for extra-territorial connecting lines.  Third. Contracts for private lines.

The first class embraces the business of constructing lines and apparatus within a certain described area, and affording facilities for telephonic communication between the customers or subscribers of the company having control of the business in the district in which such customers reside.  This embraces the usual and ordinary mode of using telephones, and covers by far the most lucrative and extensive method of employing telephones by the public.  Other occasional uses are those designated as extra-territorial contracts and private-lines contracts.  These uses are of a limited nature, and the receipts therefrom are comparatively insignificant, amounting in the aggregate to about one fiftieth part of the gross amount received in the business.  They are significant only for the use which is attempted to be made of them through some slight differences in the provisions of the contracts relating to the conduct of the respective kinds of business.

The sums required to be paid by the local companies to the

defendant company for royalties upon the instruments leased by them, vary slightly between the various local companies, and also according to the character of the use which is made of them; but is controlled, in certain instances, by a percentage upon the amounts received by the local companies from their respective customers and subscribers, and which sum is specified and fixed in each contract. The sums, however arrived at, are intended as the measure of the compensation of the licensor for the use and employment of its telephones by the local companies. The receipts for the use of telephones are in all cases collected by the local companies, and the defendant company has no right in any case to make such collections except upon a default in the payment of royalties, or dues, by the local company, when, in some instances, the licensor is authorized, in order to protect itself from loss, to collect, in the name of the local company, so much of the dues owing to it by its customers as will satisfy the sums due and unpaid to the defendant company. It is also in some cases, upon the default of the local companies in supplying telephonic facilities to their customers, authorized to take possession of their plant and to carry on the business until other satisfactory arrangements can be made for carrying it on.

The receipt by the Bell Telephone Company of the royalties and dues stipulated to be paid to it by its licensee, discharges all of the obligations assumed by the licensees under the contracts, except those incurred by the restrictions upon the mode of using telephones which were introduced in the contracts by the defendant for the sole purpose of protecting its patents, and its general interests in carrying on the business of leasing telephones for public use.

The duties and obligations of the Bell Telephone Company under their contracts may be stated concisely as an obligation to furnish the local companies at such times as they may call for them with a sufficient number of transmitters and receivers to supply the demand for the same by the patrons and subscribers of the local companies.

The obligations of the local companies are to extend the use of such instruments as much as possible; to furnish plant, poles, wires, switch-board and switches, and other appliances to connect the instruments leased with the central office of the company, and with such other leased instruments and lines as they are permitted to connect with; to use the instruments leased only in the prescribed modes, and to pay monthly to the Bell Telephone Company in Boston the royalties and dues upon each instrument delivered, by whomsoever used or to whatever use it may be devoted. In the initiation of the business of furnishing facilities for communications through telephones, it is obvious that there were but two practical modes which the defendant could advantageously pursue. The first was to engage in the business of erecting plants, wires and appliances in the various towns and cities requiring such facilities, and to conduct the business through its own servants and agents. There were obvious objections to this plan, as it involved the employment of a vast capital, the incurring of enormous expense, and the conduct and control of an extensive and complicated system, beyond the capacity of a single company to successfully manage and conduct in detail. Such a system would not only have brought the property and business of the company, employed in any particular state, directly within the system of taxation authorized by the laws of such state, but would expose them to the imposition of taxes in each of such states beyond the ability of the most prosperous and wealthy corporation to bear. The second mode of conducting such business, which was the one adopted, was to apportion the territory of the Union into districts and to lease to and license the use of telephones by persons or corporations in each of said districts, to be used by them in connection with such plant, lines and appliances as they should require and supply, upon such terms and conditions as might be imposed by the licensor for the protection of its rights and the profitable and secure employment of its property; but to be conducted with the capital of the licensees and under their man-

agement and control. This system would subject the business, and all property employed, and earnings derived from the business in any particular state, to taxation under the laws of the state where it was carried on. By this system the licensor retains the ownership of its patents and the supervision and ownership of all instruments manufactured thereunder, and all rights of use in the various states not expressly granted to others, with the right of manufacturing such instruments and leasing them to be used in any unoccupied territory upon such terms. and conditions as would best promote its own interests.

It was lawful for the defendant to pursue either of these courses, and it is not justly subject to censure or criticism for the course adopted, whatever it might be.

It is obvious, from the method of doing this business, that whatever special provisions may be found in the contracts, there could have been no intention on the part of the defendant or its licensees to evade taxation in this state, for, by the mode adopted, the use of telephones here is conducted wholly by corporate companies having capital stock, possessing a place of business and owning the plant, wires, poles, switches and switch boards, necessary to carry it on, with authority to collect and receive the entire earnings for the use of telephones in their district, and subject to taxation upon all their property and business.

The case does not disclose the aggregate capital of the several local companies in the state, but it is manifest that all of the capital necessarily required in doing their business is invested in and owned by such local companies; and it is indisputable that only the capital actually employed in such business is justly subject to taxation in this state.

It is manifest, therefore, that none of the property employed in the prosecution of this business or the earnings received therefrom can escape liability for the payment of taxes in this state, and every duty and obligation owed by property owners to the state is fully satisfied and performed by them. The local companies are concededly liable for the payment of all taxes on

real estate and property owned by them, and, like other cor-porations, they are also liable for taxes upon their capital stock and gross earnings for the business of furnishing telephonic facilities to the citizens of the state, and, unless it was intended by the legislature in the statute referred to, to impose double taxes, it is impossible to say that the Bell Telephone Company was also liable to be taxed upon the same business or any part thereof.   In the absence of a clearly expressed intention to do so, it will not be presumed that the legislature intended to impose such taxes.

As we have before said, the sole question is, what company, in fact, conducted and controlled the business which resulted in the collection of income from the People of the state? Such business, obviously, could not have been practically or theoretically conducted in the town territory by two companies. Neither could the receipts therefrom have been the exclusive property of each of two different persons or companies.   They must, necessarily, have been that of one or the other.

The contract is to be construed according to the intentions of the parties, as exhibited by its provisions and the acts of the parties under it, and, unless it can be clearly inferred from those sources of information that it was intended to create a business to be conducted practically and potentially by the Bell Telephone Company, and that such business has been actually created and pursued by them, the appeal must be sustained.

The contracts being such as were lawful for the companies to make, and showing an intention that the local companies should transact business on their own capital, owning or con-trolling the property with which the business was done; collecting and receiving the earnings of such business, and entitled to enjoy them as its own property, subject only to the payment of such obligations as it lawfully incurred in the prosecution of its business, it is difficult to see any foundation for the claim that the business thus carried on was not the business of such companies.

We are of the opinion that the relations existing between the parties were those of licensor and licensee and of lessor and lessee, and that the business carried on by the local companies was in no just sense that of the Bell Telephone Company.

The rights and powers of the local companies were protected by contract, and they were as secure in their enjoyment, so long as they continued to perform the obligations of their contracts, as the American Bell Telephone Company was in its rights. Neither the license or the prosecution of its business by the local company could be arbitrarily revoked, terminated or annulled by the American Bell Telephone Company, and the relations between them were in no just sense those of principal and agent.

These questions have been expressly adjudicated in the Circuit Court of the United States in Ohio, and by the Supreme Court of Pennsylvania in the cases of *The United States* v. *American Bell Telephone Company* (29 Fed. Rep. 17) and *Commonwealth* v. *American Bell Telephone Company* (18 Atl. Rep. 122).

In the former case Judge Jackson, delivering the opinion of the court, in a similar case, says: "For one person to supply the means to another to do business on is not the doing of that business by the former. Transactions, such as the American Bell Telephone Company has had with the licensee corporations in Ohio at its place of business in Boston, and not elsewhere, are not the carrying on of business in Ohio, nor are such licensee corporations its managing agents."

We quite agree with the doctrine laid down in these cases and consider them decisive of the question presented here. The court below held, however, that the relations between the Bell Company and the local companies were those of principal and agent; and that under the provisions of the act of 1880, as construed by this court in *People* v. *Equitable Trust Company* (96 N. Y. 387) not only the royalties payable to the Bell Telephone Company, but that its whole capital stock, amounting

to ten millions of dollars, was brought within the jurisdiction of this state and made subject to taxation, and that this result was obviated for the period prior to the act of 1885, only by the magnanimity of the state in neglecting to claim the whole sum which was due to it. The theory upon which this result was reached is that the local companies were practically the agents of the Bell Telephone Company, and, therefore, that the business carried on was, in law, that of the latter company. This conclusion was based upon the effect ascribed to some of the provisions of the contracts applicable to the business called private lines, and connections with the Western Union Telegraph Company lines, and the circumstance that the Bell Telephone Company was a stockholder in the local companies.

It is argued from the provision in such contracts requiring leases to the patrons of the private lines be made in the name of the Bell Telephone Company, that such provision made the income derivable therefrom the property of such company, and constituted the local companies its agents in respect to such business. We are unable to concur in this view. We think that court has ascribed to this provision a significance which, under all of the circumstances of the case, it is not entitled.

In view of all of the provisions of the contract, it is obvious that the intent of this requirement was simply to place and keep the instruments leased within the supervision and ultimate control of the patentee so as to preserve their title, and effectually prevent any improper use of them by their lessees. The conduct, management and control of all this business was irrevocably confided to the local companies, and no material distinction between the various classes of business authorized by the contracts was intended to be made in respect to the powers, duties and obligations of the corporations by which it was prosecuted. The royalties and dues upon such instruments were collectible by the local companies as in other cases, and they became responsible for the payment to the Bell Telephone Company of all such royalties and dues.

Much the most expensive part of the plant, lines and wires required to transact this business was to be supplied by the local companies and remained their property, and they had control of the business done thereon and, within reasonable limits, of the compensation derived therefrom.

We think the court below gave undue effect to the provisions in the contracts inserted for the purpose of guarding and protecting the rights of the patentee in its patents, and have stretched them beyond their natural design and significance when referring to them as establishing an intent to give the licensor a paramount right to control the business carried on by the use of the leased instruments.

From no point of view could the circumstance referred to have given to the state authority to tax the gross earnings of the defendant beyond the amount received under this branch of the contract and the amount of capital required to carry it on, which would naturally seem to be the cost of the telephones used in that branch; but it has been attempted to be used to transform the character of the entire business carried on by the local companies in this state.

The express concessions of the parties relating to this subject in the stipulation submitting the controversy also seems to be controlling on this subject. Thus it is agreed, as a fact, that "provisions are inserted in the contract designed to prevent the illegitimate use of such lines by unauthorized persons, or for the transmission of messages for persons other than those authorized to use such lines, and for this purpose, as well as for the purposes of guarding against infringements of patents, the contract provides that the title to the telephones shall remain in the Bell Telephone Company, and that the New York Company shall cause the same to be leased in the name of the former company to such parties as the latter company shall select. * * * Rentals payable for the use of the telephones are thus in form payable to the Bell Telephone Company, but the New York Company is authorized, so long as it complies with the terms of the contract, to collect such

rentals, and, in fact and in practice, it does collect them, and if the American Bell Telephone Company collects any thereof, it is obliged to account therefor to the New York Company. * * * The rentals agreed to be paid by the leases, although in form and in legal contemplation payable to the American Bell Telephone Company, are equitably and beneficially the moneys of the New York Company."

It seems to us that the concessions furnish an irrefutable answer to the argument that the provisions relating to the private lines created any practical distinction between such business and that pursued under the exchange or extra-territorial provisions.

It is manifest that so much of the argument of the court below as is based upon the fact that the American Bell Telephone Company is a stockholder in the local companies derives no support from that circumstance. In no legal sense can the business of a corporation be said to be that of its individual stockholders. It is true that they have an interest in the business carried on, and an influence in controlling its conduct; but they have created a legal entity to prosecute such business, make its contracts and be responsible for its obligations, and that entity is alone responsible to persons dealing with it for the conduct of such business. The taxation of a foreign or domestic stockholder in a domestic corporation upon the business of such corporation, upon the theory that it was his business, would be an unreasonable exercise of the power of taxation, and such a tax, upon the theory that a licensor or lessor, retaining title in himself to a patented article, borrowed or leased of him by some person or corporation for the purpose of carrying on a trade or business, was himself carrying on such business, cannot be supported upon any known principle of law.

Having arrived at the conclusion that the defendant company is not taxable at all in this state upon its gross earnings or capital stock, it is unnecessary to consider the principles upon which its capital stock should be apportioned, in case it

had been taxable, in order to determine the amount of tax payable on the capital employed in this state.

In view of the inconsiderable value of the instruments owned by it in this state, and the large amount of its capital, the great value of its patents and the cost of conducting its manufactories in Massachusetts, it is by no means clear that the mode adopted in this case of apportioning the whole capital of ten millions, according to the proportionate number of telephones used in the several states, produces a correct result. While the large amount of its capital stock owned by the defendant and its prosperity, as indicated by its liberal dividends, presents an attractive object to the vigilant financier it should not be forgotten that the possessor of this wealth is a foreign corporation domiciled in the state of Massachusetts, and there subject to account for the obligations it incurs in return for the protection it enjoys under the laws of that state. We are quite unable to sanction a principle which would subject it to the liability of being taxed, not only in Massachusetts, where it is located, as it undoubtedly would be, under the law as laid down by us in the *People* v. *Horn Silver Mining Company* (105 N. Y. 76), on its entire capital stock and gross earnings; but also in each state of the Union in which it should own telephones leased to corporations for the use of the people of such state, on such proportion of its capital stock and gross earnings as the law makers of such state saw fit to impose.

Under the rule as declared by the judgment appealed from, the defendant is now made liable to taxation upon a proportion of its capital stock and the royalties it collects from its licensees in this state, when it is also unquestionably liable to tax in Massachusetts upon all its property, as well as capital stock and gross earnings, and also as a stockholder in the local corporations, has been made liable to pay taxes indirectly upon a portion of its capital stock and all of its earnings employed in this state. We do not think a construction of the agreements between these companies which produces such a result is

reasonable or just, or can be reached without ascribing to the parties a design which is not fairly inferable from the language of their contracts.

We are, therefore, of the opinion that the judgment of the General Term should be reversed and judgment ordered for the defendant, with costs.

All concur.

Judgment accordingly.