Matter of the Transfer Tax upon the Estate of HETTY H. GREEN, Deceased.

(Surrogate's Court, New York County, December, 1917.)

Transfer tax — meaning of "doing business" — corporations — domicile — evidence — Tax Law, § 220(2) as amended by Laws of 1916, chap. 323.

A transfer tax proceeding being in the nature of an inquisition at the instance of the state, the common law rules of evidence have no strict application, and while the state should be liberally treated the proceeding should not be allowed to harass the citizen.

Where, it having been determined that a decedent at the time of her death was not domiciled in this state, the transfer tax proceeding was remitted for the purpose of appraising her estate as a non-resident, and it appears that for the two years immediately preceding her death she had no office in this state for the transaction of business, that she did not solicit nor transact business with the public or hold herself out as a lender

Surrogate's Court, New York County, December, 1917.    [Vol. 102.

of money, but that her business activities were confined to receiving interest and dividends on her investments and investing in securities so much of her income as was not required for her living expenses, she was not " doing business " in this state within the meaning of section 220(2) of the Tax Law, as amended by chapter 323 of the Laws of 1916.

Evidence considered and *held* that any business done by a domestic corporation in which decedent had a controlling interest at the time of her death was not her individual business and did not constitute the " doing of business " by her in this state within the meaning of the transfer tax statute.

APPEAL from an order assessing a transfer tax.

Lafayette B. Gleason (John B. Gleason, of counsel), for state comptroller,

Alexander & Green (Charles W. Pierson, of counsel), for executor.

FOWLER, S.   The present appeal to the surrogate involves issues of residence and domicile already passed on, and they need not be further considered on this appeal.   In addition the appeal now involves the regularity and validity of the appraiser's rulings on matters of so-called evidence in the proceeding for the appraisal of the estate of the late Mrs. Hetty Green. This proceeding was initiated to determine the amount of the succession taxes due to the state of New York. In the course of such proceeding the state comptroller claimed, first, that Mrs. Green died a resident of New York, or domiciled in the state of New York.   This first contention, on a special certification to the surrogate, was decided adversely to the state of New York.   99 Misc. Rep. 582; affd., 179 App. Div. 890.   The comptroller then next changed his theory of incidence and contended before the appraiser that Mrs. Hetty Green's capital was employed in business within the

state of New York. It was in the course of this last contention that the appraiser's rulings on matters of evidence were made. The validity and correctness of these rulings are involved in this appeal.

A proceeding of this nature before the appraiser is not the trial of an action at law, and the common-law rules of evidence, wisely made binding in actions at law, have no strict application to such a proceeding as this. It is a fundamental error to assume that the common law of evidence, made for special occasions and trials *in pais,* pervades the entire jurisprudence of common-law countries. This proceeding is in the nature of an inquisition, at the instance of the state, to determine the amount coming to it. The tax could be levied in the absence of law without any such proceeding, and the state could determine for itself in any way it chose the amount of the tax. If there was error it could be formerly remedied by the old prerogative writs of certiorari or mandamus. The present Transfer Tax Law is a substitute for the old methods, and I venture to think a very fair and wise one, doing substantial justice in this state. But on such an inquisition it would be a wrong to the state if it were held too closely to rules of evidence only appropriate in actions at law. Of course, there are certain fundamental rules, not of evidence but of substantive law, which do bind the state in any proceeding, *e. g.,* the constitutional mandate that a citizen shall be exempt from unreasonable searches.

But while the state on any such inquisition should be liberally treated, the proceeding should not be allowed to harass the citizen. The proceeding should be consistent with general principles of fair dealing, of justice, and of right. The state should not be allowed to inquire into matters entirely irrelevant nor should it be permitted to inquire concerning matters not germane

to the scope of the inquiry. That would be needlessly vexatious to the citizen.

The question of decedent's domicile having heretofore been submitted to me as stated above, and my decision to the effect that she was not domiciled in this state at the time of her death having been affirmed by the Appellate Division (179 App. Div. 890), the proceeding was remitted to the transfer tax appraiser for the purpose of appraising her estate as a non-resident of this state. Affidavits and schedules were filed with the appraiser, showing the net value of the tangible assets of the estate in this state, and the executor was examined before the appraiser and questions propounded to him by the state comptroller in relation to the business activities of the decedent during the two years prior to her death. These questions were intended by the state comptroller to elicit information concerning the business transactions of the decedent in order to bring her estate within the amendment effected by chapter 323 of the Laws of 1916. That amendment provides that a tax shall be imposed upon the transfer of property " when the transfer is by will or intestate law of capital invested in business in the state by a non-resident of the state doing business in the state either as principal or partner.'' By the language just quoted it will appear that in order to subject the intangible property of a non-resident to taxation in this state the following conditions must exist. *First,* such intangible property must be capital invested in business in this state; *second,* the non-resident owning such property must be doing business in this state, either as a principal or a partner.

From the testimony taken before the appraiser in relation to the business activities of the decedent in this state for the two years immediately prior to her death it appears that she had no office in this city for

the transaction of business, that she did not solicit business or transact business with the public or hold herself out to the public as a person having money to lend. Her business activities were confined to receiving interest and dividends on her investments and investing in securities so much of her income as was not required for her living expenses. Under these circumstances I am inclined to think that she was not doing business in this state within the meaning of these words in the transfer tax statute. It seems to me that it was the intention of the legislature in enacting the amendment above quoted to bring within the provisions of the transfer tax statute the capital invested in business in this state by a person actually doing business, for example, with the public in the purchase and sale of commodities or securities, and that it was not intended to apply to a person who did not buy from and sell to the public, but who was exclusively engaged in investing his own money in securities in this state. It would seem to me to be essential, in order to bring a person within the intent of the amendment, to show that he was actually engaged in some general common-law "business." The process of investing capital, even for gain, is not a common-law business. It may be proper to show that decedent maintained an office or place in this state where he could meet persons interested in the particular business in which he was engaged and make purchases or sales either as principal or agent. That is a detail.

I have, however, been unable to find a decision which holds that a person who occasionally invests his own money in securities selected by him is engaged in business, and none has been cited by the parties. If, as contended by the state comptroller, the decedent was doing " business " in this state during the two years immediately prior to her death, how could such business be

Surrogate's Court, New York County, December, 1917.   [Vol. 102.

designated or classified? Not as a money lender, because the evidence shows that during that time she did not loan money on call; not as a broker, because she did not purchase securities for others or on commission. I am therefore inclined to think that the occasional purchase of securities by the decedent for her own account did not constitute doing business in this state within the meaning of those words in the transfer tax statute. The common law governs the meaning of words in statutes, unless the statute provides otherwise.

It is contended, however, that the purchase and sale of securities by the Westminster Company, a domestic corporation, was really the transaction of business by the decedent, because the entire capital stock of the Westminster Company was furnished by the decedent. The company was organized in 1911 with a capital stock of $125,000. The number of shares issued was 1,250, of which the decedent held 630. The decedent's son held 600 shares. The dividends were divided among the stockholders in proportion to the number of shares held by each, so that, while the capital with which the company commenced to do business was furnished by the decedent, she was only entitled to dividends on 630 shares. Since 1914 she had nothing to do with the management of the affairs of the company, and it did not act as her agent. In *Peterson* v. *Chicago, Rock Island & Pacific R. Co.,* 205 U. S. 364, it was held that a railroad company is not doing business in a state simply because another railroad company of which it owns practically the entire capital stock does business there. In *Philadelphia & Reading R. Co.* v. *McKibbin,* 243 U. S. 264, it was held that the fact that a corporation subsidiary to another is doing business in a state does not warrant the finding that the controlling corporation is doing business there. And

Misc.] Surrogate's Court, New York County, December, 1917.

in *People* v. *American Bell Telephone Co.*, 117 N. Y. 241, it was held that although the telephone company, organized under the laws of Massachusetts, subscribed largely to the stock of corporations organized in this state for the purpose of supplying telephone service, it was not thereby doing business in this state. It would seem, therefore, that any business done by the Westminster Company, in which the decedent held a controlling interest, was not the business of the decedent individually and did not constitute the doing of business by her in this state within the meaning of the transfer tax statute.

The questions propounded by the attorney for the state comptroller, which were objected to by the attorney for the executor and which objections were sustained by the appraiser, were inquiries as to the names of banks in which the decedent had accounts, the character of the notes which the decedent purchased, the aggregate value of the notes which the Westminster Company had on hand on the 1st day of July, 1914, the amount of capital which that company had on hand at the date of the death of the decedent, and the value of the stocks purchased by the company for Mrs. Green. The questions in relation to the amount of the cash balances held by the decedent in New York banks were immaterial, unless it was first shown that the decedent was engaged in business in this state, and that the money in bank was used by her in connection with that business. No proof having been adduced before the appraiser to show that the decedent was engaged in business in this state, the amount of her cash balances in banks in this state was immaterial, and the objections to questions asked by the state comptroller in relation to such balances were properly sustained. The appraiser also correctly sustained the objections to the questions designed to obtain from the executor

Appellate Term, First Department, December, 1917.   [Vol. 102.

the nature of the notes in which the decedent occasionally invested her surplus dividends. Such interrogations could not be relevant either to the question of whether she was doing business in this state or the value of her tangible assets in this state at the time of her death. The aggregate value of the notes which the Westminster Company had on hand on the 1st of July, 1914, could have no materiality to the question of the taxability of the estate of the decedent as a non-resident of this state. The other questions to which objection was made by the executor and sustained by the appraiser were of a similar nature, and the rulings of the appraiser were correct.

From a consideration of all the evidence taken before the appraiser I am inclined to think that he acted properly and with required fairness, and that no substantial error was committed. I hold on the evidence submitted that the decedent at the time of her death was not doing business in this state within the meaning of those words in the Transfer Tax Law, and that the appraiser was correct in sustaining the objections to the questions propounded by the attorney for the state comptroller. Order fixing tax affirmed.

Order affirmed.