Matter of the Estate of JOSEPH W. OGDEN, Deceased.

(Surrogate's Court, New York County, May, 1918.)

Transfer tax — what not subject to — nonresidents — taxable assets — deduction — remainders.

Where it appears that a nonresident member of the New York Stock Exchange was not doing business in this state at the time of his death the value of such membership is not subject to a transfer tax.

In order to ascertain the value of taxable assets in this state belonging to a nonresident, debts due domestic creditors and expenses of administration should be deducted from such value in the proportion which such assets bear to the entire assets in this state.

Where a certain paragraph of a will discloses that it was testator's intention to give to each of the four children of his brother a life estate in one-quarter of the remainder after the

34

Surrogate's Court, New York County, May, 1918. [Vol. 103.

life estate of said brother, but that if any of said four children should predecease his father his share should go to his descendants, a power of appointment given to the brother as to the principal, the exercise of which is limited to the share of those of his children who may survive him and which he cannot exercise if he is not survived by more than one child, is contingent and the remainder over which it may be exercised is presently taxable.

Where a transfer tax appraiser reports a contingent remainder taxable as if it passed to executors for beneficiaries of the five per cent class, it constitutes an independent transfer and though taxable at the highest rate it should not, for the purpose of increasing the graded tax on such remainder, include the value of an absolute legacy upon which the remainder is limited.

APPEAL by executors from an order fixing and assessing the transfer tax.

John S. Jenkins, for executors.

Charles M. Travis, for State Comptroller.

FOWLER, S. The appeal of the executors brings up for review the finding of the appraiser that the value of the decedent's membership in the New York Stock Exchange constituted property in this state subject to taxation under the provisions of the Tax Law.

The decedent's domicile was in New Jersey, and he died there on the 26th of October, 1916. For many years prior to 1900 he had been engaged in business in this state as a stockbroker and banker, but he retired from business in that year. Subsequently he came to this city frequently and bought and sold securities for his own account. Such purchases, however, were made through another member of the Stock Exchange. He refused to transact any business for his friends and former patrons, but referred them to another stock exchange house.

Subdivision 2 of section 220 of the Tax Law, as amended by chapter 323 of the Laws of 1916, provides that a tax is imposed upon the transfer of property " when the transfer is by will or intestate law of capital invested in business in the state by a non-resident of the state doing business in the state either as principal or partner." While the money invested by the decedent in the purchase of the Stock Exchange seat may have constituted " capital invested in business in the state," it is not, therefore, necessarily subject to a transfer tax; it must appear in addition that the decedent was doing business in this state, either as principal or partner. A careful examination of the testimony taken before the appraiser convinces me that the decedent was not doing business in this state at the time of his death. The value of his membership in the New York Stock Exchange, therefore, is not subject to a transfer tax in this state. *Matter of Green,* 102 Misc. Rep. 45.

The executors also contend that the appraiser erred in failing to deduct from the taxable assets in this state the entire amount of debts due to domestic creditors and the expenses of administration in this state. The appraiser found that the debts due domestic creditors and the expenses of administration in this state amounted to $13,184.50, and he deducted this amount from the taxable assets in the proportion which the entire assets in this state bore to the taxable assets.

While it is true that for the purpose of the transfer tax the surrogate has no jurisdiction over non-taxable assets in this state, he has the power to determine the value of the tangible property of a non-resident decedent in this state which is transferred by will or by the intestate laws. The amount required to pay debts due New York creditors and the expenses of adminis-

tering the estate in this state is not transferred to legatees and beneficiaries under the will of a decedent. The taxable assets are not the primary fund from which such debts and administration expenses are paid, but the entire personal estate in this state, whether taxable or not, is liable for such indebtedness and expenses of administration. The executor in satisfying debts due domestic creditors, or paying administration expenses here, cannot discriminate between taxable and non-taxable assets. In order, therefore, to ascertain the value of the taxable assets in the state, debts due domestic creditors and expenses of administration here should be deducted from the value of the taxable assets in the proportion which such assets bear to the entire assets in this state. Consequently the appraiser was correct in refusing to deduct from the taxable assets in this state the entire amount of debts due domestic creditors and the expenses of administration in this state.

The executors also contend that the appraiser erred in reporting as presently taxable the remainder after the life estate given to William W. Ogden in the 8th paragraph of the will. In that paragraph the decedent gave to his executors the sum of $100,000 in trust to pay the income to his brother, William W. Ogden, during his life, and after his death to divide the principal into as many shares " as shall be the number of his said four children who shall then be surviving, joined to the number of such of those four children as may then be deceased, leaving descendants." To such descendants he gave the parents' share, and directed that the shares of the surviving children be held in trust during their lives and upon their death the respective trust funds to go to their descendants. He then gave to his brother, William W. Ogden, a power by his last will and testament to change the proportion

in which the principal of the sum held in trust during his life is to be divided between the children, and in his discretion to make the principal of the shares apportioned to any of them by him or by the will of the decedent payable to them instead of held in trust for them.

While the power of appointment given to the life tenant is contained in a separate sentence and is apparently absolute, it must be read in connection with the other parts of paragraph 8th. An examination of the entire paragraph shows that the decedent intended to give to each of the four children of his brother William a life estate in one-quarter of the remainder after the life estate of William, but that if any of the four children should die during the life of William his share was to go to his descendants. There is therefore an absolute gift of one-quarter of the residuary to the descendants of either of the children who should die before William W. Ogden. If, however, it should be held that William has an absolute power of appointment, and he should apportion by his will one-eighth of the remainder to one of his children, and such child died before the termination of the life estate, his descendants would only be entitled to one-eighth, while under the will of the decedent they would be entitled to one-quarter. It is a general rule that where a gift is given in an earlier part of a will in language that is absolute on its face, it will not be cut down or defeated by a subsequent clause which is ambiguous or of doubtful meaning. *Benson* v. *Corbin,* 145 N. Y. 351; *Goodwin* v. *Coddington,* 154 id. 283.

I will therefore hold that the power of appointment given to William is not absolute, but that its exercise is limited to the shares of those of his children who may survive him, and that if he is not survived by more than one child he cannot exercise the power. The power being contingent, the remainder over which

Surrogate's Court, New York County, May, 1918. [Vol. 103.

it may be exercised is presently. taxable. *Matter of Burgess,* 204 N. Y. 265.

The executors also contend that the order is incorrect in assessing a tax of $2,868.70 upon the sum of $50,147.27 assessed against the executors for the benefit of the five per cent class, and a tax of $2,754.75 upon the sum of $47,868.22 also assessed against the executors for the benefit of the five per cent class. Either the calculation of the tax is incorrect, or the amounts assessed against the executors are added to individual legacies for the purpose of computing the tax. The state comptroller states that the tax against the executors in each case is computed by adding the amount assessed against them to the value of the temporary life estate of Ogden Minton and Norman E. Ogden, respectively.

The decedent directed that the remainder after the life estate of his wife should be divided, and that the income from two-fifths of such remainder should be paid to Ogden Minton until he arrived at the age of thirty-five years, when the principal was to be paid to him; if he died before thirty-five, leaving descendants, the principal to be paid to his descendants, and, if there were no descendants, the principal to be paid to his heirs. A similar provision was made for Norman E. Ogden. The appraiser found that the remainder after the temporary life estate of Ogden Minton was $50,147.27, and he reported that this was taxable against the executors for beneficiaries of the five per cent class. He found that the remainder, after the temporary life estate of Norman E. Ogden, was $47,868.22, and he assessed this against the executors for the benefit of. the five per cent class. The state comptroller submitted an order fixing tax in which he added the remainder to the value of the temporary life estate of each beneficiary, and taxed such remain-

der as if it vested absolutely in the beneficiary. It would seem that if the remainder is to be taxed as if it belonged absolutely to each beneficiary it should be taxed againt him and not against the executors for beneficiaries of the five per cent class. The fact that the remainders are taxed in the order of the state comptroller against the executors, and not against Ogden Minton or Norman E. Ogden, shows that, in his opinion, they constitute independent transfers. If they are independent transfers, they should not be added to the absolute bequests given to Ogden Minton and Norman E. Ogden.

When section 230 of the Tax Law was first amended so as to provide for the taxation of remainder interests at the highest rate at which they could in any contingency be taxable, the only rates of taxation were one per cent and five per cent; and the value of contingent remainders has since been taxed at the five per cent rate if they could in any contingency vest in beneficiaries of the five per cent class. When the legislature in 1916 changed the rates so as to provide for one per cent, two per cent and five per cent primary rates, with gradations of these rates based upon the value of the property transferred to the beneficiary, and no change was made in that portion of section 230 providing for the taxation of remainders at the highest rate, it is reasonable to assume that they intended that contingent remainders should still be taxable at the highest rate, *i. e.*, at the highest of the three rates provided by statute, and not at the highest gradation of any of these rates. When the value of a contingent remainder, as ascertained by the appraiser, is reported taxable as if it passed to executors for beneficiaries of the five per cent class, it constitutes an independent transfer, and while taxable at the highest rate it should not for the purpose of increasing the graded

tax on such remainder include the value of an absolute legacy upon which the remainder is limited. The rate of taxation is one thing, and the gradation of that rate is another. When the transfer is taxed against a person who receives the property, the rate of taxation is determined by his relationship to the decedent, but the particular grade in that rate at which the property is to be taxed is dependent upon the value of the property transferred. When the transfer is taxed against the executors because of the appraiser's inability to determine the persons who will ultimately take, it should be taxed at the highest of the rates prescribed by statute, but not in a grade determined by adding it to the value of some other legacy as if it actually passed to some particular legatee. Therefore the value of the individual legacies given to Ogden Minton and Norman E. Ogden should not be added to the remainders after their respective temporary life estates for the purposes of taxation, and such remainders should be taxed as if they passed to the executors for unknown beneficiaries of the five per cent class of taxation.

The order fixing tax will be reversed and the appraiser's report remitted to him for correction as indicated.

Order reversed.