CONNECTICUT GENERAL LIFE INSURANCE COMPANY, Appellant, *v.* SUPERINTENDENT OF INSURANCE OF THE STATE OF NEW YORK, Respondent.

First Department, November 17, 1960.

*Wilkie Bushby* of counsel (*John Mason Harding* with him on the brief; *Dewey, Ballantine, Bushby, Palmer & Wood,* attorneys), for appellant.

*George K. Bernstein* of counsel (*Samuel A. Hirshowitz* and *Irving Galt* with him on the brief; *Louis J. Lefkowitz, Attorney-General*, attorney), for respondent.

BASTOW, J. Plaintiff, a Connecticut life insurance company admitted to do business in this State, appeals from a judgment dismissing its complaint on motion of the defendant. The issue presented is posed in the prayer for relief in the complaint. Therein a declaratory judgment is sought that " the acquisition by plaintiff of a controlling stock interest in one or more fire or casualty insurance subsidiaries would constitute no legal basis under Sections 42(3) and 193(2) of the Insurance Law for the Superintendent to revoke or to refuse to renew * * * plaintiff's license to do in New York the business of life insurance, annuities, and accident and health insurance ".

It is conceded that under other provisions of the Insurance Law domestic life insurance companies are forbidden to write fire or casualty insurance and domestic fire and casualty insurance companies are forbidden to write life insurance. It follows and is similarly conceded that the plain intendment of subdivision 3 of section 42 and subdivision 2 of section 193 is to forbid foreign life insurance companies to write fire and casualty insurance and foreign fire and casualty companies to write life insurance. The narrow issue presented is whether or not plaintiff by acquiring a controlling stock interest in one or more fire or casualty insurance subsidiaries would be engaged in an insurance business other than that for which it is now licensed in this State in violation of the pertinent statutes.

While the Insurance Law in a general provision recognizes the right of domestic and foreign insurers to acquire subsidiaries (§ 67, subd. 1), section 90 of the same law, prior to 1958, precluded investments by a foreign insurer which did " not comply in substance with the investment requirements and limitations imposed by this chapter upon like domestic insurers ". At the same time subdivision 13 of section 81 prohibited a domestic life insurer from owning more than 2% of the outstanding common stock of any one company.

The present disagreement between the parties has been alive at least since 1956. In that year the attorneys for the respective parties submitted substantially this identical issue to the Attorney-General. It was the latter's opinion, among other things, that by reason of subdivision 1 of section 90 the proposed acquisition by the present appellant of a controlling interest in a fire insurer was " so disproportionate to the common stock acquisition limit imposed upon domestic life insurance companies by

Section 81, subd. 13 (80% as against 2%), that it must be regarded as altogether outside the contemplation of the Legislature, latitude notwithstanding.'' (1956 Atty. Gen. 177, 180.) In the light of subsequent events it is interesting to note that the Attorney-General went on to state (p. 181) that '' [i]f foreign life insurance companies believe the time has come to relax the common stock investment restrictions now imposed upon them by reason of the statute's direction that they ' comply in substance ' with the investment requirements and limitations imposed upon domestic life insurers, that is a matter for the Legislature's attention.''

In 1958 the Legislature did undertake to amend section 90 and to liberalize its provisions (L. 1958, ch. 981). The amendments, however, are here immaterial and it is not contended that they improved or materially altered appellant's position. To the contrary, a new subdivision 3 was added providing that '' Nothing in this section shall be construed to relieve any foreign or alien insurer from compliance with any other provision of this chapter.'' Moreover, in view of the fact that the lines of battle had long since been drawn the pertinent legislative documents furnish ample proof that there was no intent to nullify such prohibitions as are to be found in section 193, but instead such prohibitions were expressly recognized and reserved. (See N. Y. Legis. Annual, 1958, pp. 268, 500; N. Y. Legis. Annual, 1957, p. 577.)

Thus, subdivision 1 of section 193, when considered together with the investment limitations of section 90, has the effect of prohibiting domestic life insurers from even raising the question of whether they might escape the prohibition of the former section through the device of a subsidiary. It is equally plain that the Legislature intended that the similar prohibition in subdivision 2 of section 193 should be construed together with the investment limitations of section 90. Thus considered each complements the other — the latter dealing with investments and the former with doing business. We conclude that while section 90 after its amendment in 1958 permitted wider latitude in investments there was no intention that a foreign insurer should be permitted to acquire a controlling interest in a fire or casualty insurer. Furthermore, the 1958 amendment showed legislative intent that the prohibition of section 193 should remain in full force and effect. Having reached these conclusions we agree that Special Term was correct in denying the declaration requested in the complaint.

In our view of the issues presented it is not necessary to reach the question of whether or not public policy is offended by a

statutory prohibition that a foreign life insurer seeking to do business in this State may not acquire a controlling interest in a fire or casualty insurer. Neither is inquiry relevant whether the licensed insurer and subsidiary might or could operate as separate legal entities. There is presented a question of statutory construction — whether the pertinent statutory provisions constitute a legal basis for respondent to revoke or refuse to renew appellant's license to operate in this State if it acquired controlling interests in one or more fire or casualty insurance subsidiaries. That issue we have passed upon in the light of the suggested rule that " statutes granting powers to administrative agencies should receive a reasonable interpretation, and where the statute has as its aim a system of public regulation that can be administered efficiently and properly only by a group of qualified experts a liberal interpretation to effectuate the purposes and objectives of the statute should be preferred." (3 Sutherland, Statutory Construction, § 6604, p. 288.)

Lastly, the appellant stresses the fact that several licensed fire and casualty insurers own life insurance subsidiaries most of which are not licensed in this State. It is unnecessary to here elaborate upon the proof in the record of the basic difference between life insurance on the one hand and fire and casualty insurance on the other. Neither are we required to make a finding on the claimed fact that the risk involved in life insurance is reasonably predictable whereas fire and casualty insurance is written on a short-term basis and the risk is less generalized and less predictable. Neither should the issue be decided on the conceded fact that for more than 50 years two foreign life insurers have been permitted to operate in this State while owning subsidiary fire or casualty insurers.

In this action for declaratory judgment the granting of the relief requested in the complaint would be appropriate only because of the *in terrorem* effect of a revocation or refusal to renew appellant's license. (Cf. *New York Foreign Trade Zone Operators* v. *State Liquor Auth.*, 285 N. Y. 272, 278.) Moreover, plaintiff did not seek in its complaint and would not be entitled to a declaration that because two others similarly situated operated in this State while owning subsidiaries appellant is thereby denied equal protection of law. The authorities relied on by plaintiff such as *Yick Wo* v. *Hopkins* (118 U. S. 356) are distinguishable. Conventional remedies exist for any party claiming to be aggrieved by the action of the respondent in continuing to renew the licenses of the two foreign insurers in question.

The judgment should be affirmed.

EAGER, J. (dissenting). The declaratory judgment sought herein has to do with the construction and effect of subdivision 3 of section 42 and subdivision 2 of section 193 of the Insurance Law upon the right of a foreign life insurance company to be licensed to do a life insurance, annuity, accident and health insurance business in New York where it has acquired and owns a controlling stock interest in one or more fire or casualty insurance companies.

Said subdivision 3 of section 42 and subdivision 2 of section 193 read together with other provisions of the Insurance Law therein referred to, expressly provide that a foreign life insurance company, licensed in this State, shall not, within or without the State, do any kind or kinds of business other than the business of life insurance, of annuities or of accident and health insurance. Concededly, however, there is no provision in these sections or elsewhere in the Insurance Law expressly saying that such a company shall not acquire and own all or substantially all of the controlling stock in a corporation engaged in a fire or casualty insurance business.

The position of the respondent Superintendent of Insurance is that the control by a foreign life insurer of a fire or casualty insurance company, though not expressly proscribed by the statute, would have the effect of violating the business limitation provisions of said sections 42 and 193. Generally speaking, however, the acquiring and owning by a foreign life insurer of all or substantially all of the stock of a fire or casualty insurance company would not have the effect of placing the foreign life insurer in the position of doing a fire or casualty insurance business. This follows, because it is well settled that in no legal sense can the business of a corporation be said to be that of its stockholders. (*People* v. *American Bell Tel. Co.*, 117 N. Y. 241, 255; *Matter of Green*, 231 N. Y. 237, 246, 247. Also, *People ex rel. Edison Light & Power Installation Co.* v. *Kelsey*, 101 App. Div. 205; *Conley* v. *Mathieson Alkali Works*, 190 U. S. 406.)

The respondent Superintendent argues that foreign life insurers should not be allowed " to evade " the " mandate " of the provisions of sections 42 and 193 " through the medium of a corporate subsidiary ", and that the " public policy pronounced in those statutes " should not be permitted " to be subverted indirectly, through the use of a corporate device ". True, his general position in this connection is certainly to be supported, when applicable, but such position is not incompatible with the position of plaintiff in this action and is not applicable as a defense to this action. The Superintendent confuses the issues here when he talks generally about the evils of allowing

life insurers to do a fire or casualty business. He is thus presupposing, without justification, that the plaintiff will utilize a fire or casualty subsidiary as a mere agent or tool to evade the provisions of said sections.

We are not now concerned with the question of whether or not the plaintiff will be permitted to deal directly through a subsidiary in violation of the statute. We are bound to assume that the mandate of the statute will be respected and that a subsidiary of plaintiff doing a fire or casualty business will carry on in the usual way, namely, as an independent corporate entity.

It is a special attribute of every corporation, firmly rooted in our law, that it is a separate legal entity. The corporate charter creates and constitutes it as a legal entity, distinct from its members and from other corporations. (*Matter of Mount Sinai Hosp.*, 250 N. Y. 103, 111.) So considered is a corporation, the stock in which is entirely or principally owned by another corporation. The autonomy of a subsidiary corporation as a distinct legal entity engaged in business for itself is required to be recognized in the absence of special circumstances showing that the "corporate veil" exists for fraudulent purposes or as a mere subterfuge. (See 11 N. Y. Jur., Corporations, § 15, and cases cited.) We have no right to assume here that the plaintiff will utilize a fire or casualty subsidiary fraudulently or as a mere subterfuge to circumvent the provisions of sections 42 and 193.

Public policy is not contravened or offended by the foreign life insurer's ownership of the stock of a fire or casualty company. All that public policy requires is that there be adequate protection against insolvency of such insurer, and concededly sufficient for this purpose are the safeguards imposed with respect to approved and admitted assets and the capital and surplus required of a licensed foreign insurer.

Furthermore, the contention of the Superintendent with regard to his sought for effect of the provisions of sections 42 and 193 is not reconcilable generally with interpretation and construction of his office of the provisions of the Insurance Law as a whole with respect to the powers of foreign insurers to own stock in other insurance companies. His office has held inapplicable to foreign insurers the provisions of such law prohibiting domestic insurers from acquiring and owning substantial stock interests in other insurance companies. Consequently, the Superintendent has long acknowledged that many existing foreign insurers, including life insurers and fire or casualty insurers, licensed here, are entitled to own controlling stock interests in other insurance companies engaged in a different

line of business. The plaintiff in its reply brief names 15 particular foreign insurers, licensed in this State, which own subsidiaries engaged in a different line of insurance business.

The fact is that the matter of stock ownership by a licensed foreign insurer has generally been considered and treated as a matter governed by provisions of law and regulations having to do with permitted investments and required capital and surplus of the insurer. There are statutory provisions in this State expressly having to do with stock ownership by foreign insurers, interlocking directors in insurance companies and the common management of insurance companies (see Insurance Law, § 67 and art. V, and particularly §§ 67, 90), but none of such provisions are construed to prohibit a foreign life insurer from owning the stock of a fire or casualty insurance company. In the application of the law, the assets of a foreign insurer which do not conform to the investment provisions of the Insurance Law relating to domestic companies of the same kind are disregarded as not within the category of "admitted assets" in determining whether the foreign insurer meets the asset, capital and surplus requirements in order to do business in the State. In following such practice, there is no unwarranted interference with the internal affairs of a foreign insurer; and there is nothing in such practice which is contrary to public policy where there is adequate safeguarding of the solvency of the foreign insurer.

The construction of subdivision 3 of section 42 and subdivision 2 of section 193 of the Insurance Law, sought by the Superintendent of Insurance and in effect approved by this court in affirmance of the order and judgment herein, has the effect of broadening these business limitation sections of the Insurance Law to prohibit foreign insurers from making certain kinds of investments. In my opinion, such broadening of the particular sections is unauthorized.

Much of the respondent's brief is devoted to the argument that it was the intention of the Legislature that the provisions of sections 42 and 193 should be given the effect of prohibiting licensed foreign life insurers from owning the controlling stock interest in fire or casualty subsidiaries. Neither the Superintendent nor the court may, however, write affirmative provisions into these sections on the theory of construing them to give effect to such alleged legislative intention. (See McKinney's Cons. Laws of N. Y., Book 1, Statutes, § 74.) To write into these particular sections provisions restricting foreign insurers in the matter of stock ownership and investments in independently managed subsidiary corporations would amount to the broaden-

ing of such sections to cover a matter not expressly mentioned therein and would in effect constitute an invasion of the province of the Legislature. The matter of restrictions as to stock ownership and investments by foreign insurers in other corporations, including subsidiary corporations, and regulations with respect to interlocking directors and common management of insurance corporations, are, as aforenoted, matters covered by section 67 and article V of the Insurance Law (see particularly §§ 67, 90); and it is reasonable to assume that, if the Legislature had intended to restrict foreign insurers in the matter of stock ownership and investments in subsidiary corporations as claimed here by the Superintendent, it would have inserted provisions to that effect in said section 67 or article V, particularly in 1958 when the matter was under consideration and section 90 was amended.

The foregoing is, of course, not intended to impose any limitation upon the power of the Superintendent of Insurance to revoke a license or to refuse to issue a license to a particular life insurer where there exist special circumstances indicating that it is in fact operating in violation of the provisions of law prohibiting it from doing a fire or casualty insurance business.

Under the circumstances the plaintiff is entitled, in my opinion, to a declaratory judgment that the acquisition by plaintiff of a controlling stock interest in one or more fire or casualty insurance companies would not in and of itself constitute a legal basis under subdivision 3 of section 42 and subdivision 2 of section 193 of the Insurance Law for the Superintendent of Insurance to revoke or to refuse to renew or to threaten to revoke or to refuse to renew the plaintiff's license to do in New York the business of life insurance, annuities and accident and health insurance.

The order and judgment of the court below should be modified to strike out the decretal paragraphs therein and to provide that the plaintiff is entitled to declaratory judgment as aforesaid and to provide that plaintiff's motion is granted to such extent and that the defendant's cross motion for summary judgment is denied.

Botein, P. J., Rabin and Valente, JJ., concur with Bastow, J.; Eager, J., dissents and votes to reverse in dissenting opinion.

Order and judgment (one paper) and order affirmed, with costs to the respondent.