In the Matter of the Appraisal, under the Transfer Tax Law, of the Estate of HETTY H. R. GREEN, Deceased.

EDWARD H. R. GREEN, as Executor, Appellant; THE COMPTROLLER OF THE STATE OF NEW YORK, Respondent.

**Transfer tax — decedent's estate — non-resident having capital invested within state must concurrently have been doing business therein to warrant tax — business of a corporation not that of individual stockholders — when finding that decedent having capital invested in a corporation within the state was doing business within state not supported by evidence — deposit of money in savings bank and allowance of interest does not constitute doing business within state — rehearing under Tax Law.**

1. Under the provisions of the Tax Law (Cons. Laws, ch. 60), imposing a tax upon property of a decedent " where the transfer is by will or intestate law of capital invested in business in the state by a non-resident of the state doing business in the state either as principal or partner," a non-resident decedent at the time of his death must not only have capital invested in business within the state but concurrently therewith must have been doing business within this state, otherwise the tax may not be imposed. (*People ex rel. C. J. R. & S. Y. Co.* v. *Roberts,* 154 N. Y. 1; *People ex rel. M. E. R. R. & L. Co.* v. *Knapp,* 229 N. Y. 502, followed.)

2. The business carried on by a corporation cannot be held to be that of its individual stockholders. Property unqualifiedly held by a corporation is owned alone by the corporate body. Stockholders have an interest therein but the business carried on is solely that of the corporation.

3. The fact that a decedent, when a corporation was organized, contributed the capital and took shares of stock therefor and by transfer or gift disposed of all but a controlling interest in the capital stock thereof, is immaterial in a transfer tax proceeding where the evidence does not disclose or admit of inference that the corporation in making investments was dealing with the property of decedent as agent and turning over to her the entire profit realized from the same, but rather that it was dealing in securities to which it had title and any profits arising therefrom belonged to and were the property the corporation, and a finding in such a proceeding that decedent

had capital invested in the corporation and thereby was doing business in this state at the time of her death cannot be sustained.

4. Evidence that decedent, who was the owner of certain mort- · gages on real estate in this state, at various times prior to her death transferred by assignment to a corporation, the capital stock of which was held in her interest and of which her son was president, mortgages of a large face value, some of which were thereafter foreclosed and the property bid in by the company, some of which were foreclosed and the property sold to outsiders, and some of which were held at decedent's death, and that the account of decedent disclosed a net credit for cash advanced by her to said corporation, does not support a finding that decedent was doing business in this state.

5. The deposit of money in a savings bank or trust company and allowances and credit by the depository of interest thereon does not constitute the depositor as one engaged in doing business within this state, within the meaning of the Tax Law. (*Matter of Romaine*, 127 N. Y. 80, distinguished.)

6. Where the Court of Appeals reverses an order of the Appellate Division, the effect of which is an affirmance of the order of the surrogate in a transfer tax proceeding, thereby precluding the remit- · tance of the proceeding to that officer for further hearing or more complete investigation, the remedy of the state, if any, in the way of a rehearing is to be found under the provisions of section 232 of · the Tax Law.

*Matter of Green*, 192 App. Div. 30, reversed.

(Argued April 21, 1921; decided May 31, 1921.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered September 23, 1920, which reversed an order of the New York County Surrogate's Court in a transfer tax proceeding and remitted the matter to the surrogate.

In October, 1916, the appellant, executor, initiated a proceeding for an appraisal of the estate of Mrs. Green under the Transfer Tax Law. The petition filed by the executor contained the statement that he had been advised that his testatrix at the time of her death was not a resident of the state of New York. Counsel for the executor and for the comptroller entered into a stipulation that the question of the residence of the

.1921.]             Statement of case.          [231 N. Y. 237]

deceased be submitted to the surrogate upon the evidence taken before the appraiser appointed by him and determined with the same force and effect as if the evidence had been taken before the surrogate.

After consideration of the evidence reported by the appraiser, the surrogate determined that the testatrix at the time of her death was a non-resident of the state of New York, and thereupon remitted the proceeding to the appraiser for the purpose of an appraisal of the estate of the decedent as a non-resident of this state under section 220 of the Tax Law (Cons. Laws, ch. 60).

The order made by the surrogate was thereafter unanimously affirmed by the Appellate Division and was not questioned on this appeal.

The proceeding remitted to the appraiser was continued, the estate appraised as that of a non-resident and a final order made determining the tax chargeable thereon at $81,498.99. The comptroller perfected an appeal from the order to the Appellate Division, and that court reversed the order of the surrogate on the ground that the appraiser committed error in the exclusion of evidence and ordered that the final order of the surrogate be modified by directing that the report be remitted to an appraiser for the purpose of ascertaining the amount of capital invested in business by the decedent in this state and whether the decedent was doing business in this state.

The appraiser then appointed reported that decedent did not have capital invested in business in this state and was not doing business in this state within the meaning of section 220 of the Transfer Tax Law. The report of the appraiser was confirmed by the surrogate. Upon appeal by the comptroller, the order of the surrogate was reversed on the facts and law. The Appellate Division made findings in lieu of the findings reversed in substance as follows:

That the decedent at the date of her death was engaged in business within the state of New York.

That the decedent at the date of her death had $23,324,431.18 of capital invested in business within the state in connection with the Westminster Company, and $680,520.40 of capital invested in business within the state in connection with the Windham Company.

That decedent at the date of her death had capital invested in business within this state aggregating $13,687,283.53 which consisted of individual credits in bank and trust companies at interest, certificates of deposit and a bond and mortgage made by one Wood and others.

That the foregoing was in addition to the amount fixed in the order made by the surrogate on September 6th, 1917.

The following questions were certified: " 1. Do the facts shown by the record constitute doing business in the state by the decedent at the time of her death within the meaning of subdivision 2 of section 220 of the Tax Law, as amended by chapter 323 of the Laws of 1916? 2. Did the acts of the Westminster Company constitute business done by decedent in the state within the meaning of said statute? 3. Did the moneys and securities transferred by decedent to ·the Westminster Company or the credit given decedent therefor on the books of said corporation constitute capital invested in business in the state by decedent at the time of her death within the meaning of said statute? 4. Did the acts of the Windham Realization Company, Inc., constitute business done by decedent in the state within the meaning of said statute? 5. Did the moneys and securities transferred by decedent to the Windham Realization Company, Inc., or the credit given decedent therefor on the books of said corporation constitute capital invested in business in the state by decedent at the time of her death within the meaning of said statute? 6. Did decedent's credits with banks and

trust companies at the time of her death, in so far as the same represented deposits of income and sums derived from the collection or sale of investments in other states constitute capital invested in business in the state by decedent within the meaning of said statute?"

*Charles W. Pierson* and *Clifton P. Williamson* for appellant. The business of the Westminster Company was not in law the business of its stockholder and creditor, Mrs. Green, nor did its assets constitute capital invested in business in the state by her at the time of her death within the meaning of the taxing statute. (*People v. Am. Bell Tel. Co.,* 117 N. Y. 241; *Buffalo L., T. & S. D. Co. v. Medina Gas Co.,* 162 N. Y. 67; *S. & L. P. R. R. Co. v. Arnold,* 167 N. Y. 368; *Tilley v. Coykendall,* 172 N. Y. 587; *Stone v. Cleveland, etc., Ry. Co.,* 202 N. Y. 352; *Brock v. Poor,* 216 N. Y. 387; *Watson v. Bonfils,* 116 Fed. Rep. 157; 216 N. Y. 402; *Peterson v. C., R. I. & P. Ry. Co.,* 205 U. S. 364; *P. & R. Ry. Co. v. McKibbin,* 243 U. S. 264.) The investing and reinvesting of one's own wealth in mortgages, corporate stocks and bonds and other securities does not constitute " doing business " within the meaning of the taxing statute. (*Parker Mills v. Comrs. of Taxes,* 23 N. Y. 242; *People ex rel. C. J., etc., Rys. v. Roberts,* 154 N. Y. 1; *Smith v. Anderson,* L. R. 15 Ch. Div. 247; *Gemundt v. Shipley,* 98 Md. 657.)

*John B. Gleason* and *Lafayette B. Gleason* for respondent. There was evidence to support the findings of fact of the Appellate Division that the decedent was engaged in business within the state and that her capital within the state was capital invested in business within the state. (*Matter of Blackstone,* 171 N. Y. 682; 188 U. S. 189; *Matter of Houdayer,* 150 N. Y. 37.) The decedent was engaged in business within this state. (*Hoyt v. Comrs. of Taxes,* 23 N. Y. 224; *Parker Mills v. Comrs. of Taxes,* 23 N. Y. 242; *Bristol v. Washington Co.,* 177 U. S. 133; *Matter of Jefferson,* 35 Minn. 215; *New Orleans*

v. *Stempel*, 175 U. S. 309; *Wheeler* v. *New York*, 233 U. S. 434; *Flint* v. *Stone-Tracy Co.*, 220 U. S. 107; *McCoach* v. *Minehill R. R. Co.*, 228 U. S. 295; *Von Raumbach* v. *Sargent Land Co.*, 242 U. S. 507; *People* v. *Utica Ins. Co.*, 15 Johns. 358.)

HOGAN, J.   The Transfer Tax Law imposes a tax upon the property of a decedent " when the transfer is by will or intestate law, of capital invested in business in the State by a non-resident of the State doing business in the State either as principal or partner." (Section 220, subd. 2.)

Under the provision of the statute quoted a non-resident decedent of this state at the time of his death must not only have capital invested in business within the state but concurrently therewith must have been doing business in this state — otherwise the tax may not be imposed. (*People ex rel. Chicago J. R. & S. Y. Co.* v. *Roberts*, 154 N. Y. 1; *People ex rel. Manila E. R. R. & L. Co.* v. *Knapp*, 229 N. Y. 502.)

The fundamental question arising on this appeal is: Was decedent doing business in this state at the time of her death?

The expression " doing business in this state " has been adopted by the legislature in numerous statutes relating to taxation, more particularly since the enactment of the Franchise Tax Law of 1880. The decisions in our court are uniform that the question of whether or not a corporation or individual is " doing business in this state " is dependent upon the facts as disclosed in each particular case. We are required to determine whether or not the facts included in the record of this appeal justify the findings made by the Appellate Division, which though denominated findings of fact were considered by that court as conclusions of law from the facts disclosed in the record, as evidenced by the first question submitted to us in the order of the Appellate Division, viz.: " Do the facts shown by the record

constitute doing business in the state by the decedent at the time of her death within the meaning of subdivision 2 of section 220 of the Tax Law as amended by chapter 323 of the Laws of 1916?"

Mrs. Green died July 3, 1916, aged eighty-three years. She was a woman of large wealth and a prominent character in the financial circles of New York. Various incidents of her career are disclosed in the record which we do not deem necessary to embody in this opinion, as we shall consider only the items found taxable by the Appellate Division. The first finding made by the Appellate Division is that the decedent at the time of her death had $23,324,431.18 of capital invested in business within this state in connection with the Westminster Company.

The Westminster Company is a corporation organized in the year 1911 under the law of New Jersey with an authorized capital of $125,000, which was paid in by the decedent. At the time of her death Mrs. Green owned six hundred thirty shares of the stock of that company, her son, the executor, was president of the company and held six hundred shares, and two individuals. had ten shares each standing in their names. The stock book of the company was not produced on the hearing, neither does the record disclose the dates of the issue or transfer of shares of stock.

As to the nature of the business the corporation was authorized by law to transact, or the particular powers it was privileged to exercise as a corporation under its charter, the proceedings of the board of directors, etc., the record is silent. Concededly, the corporation was doing business in this state and maintained an office where its business was carried on in the city of New York. Whether or not it was subjected to a tax in this state under the provisions of sections 181 and 182 of the Tax Law though not determinative of the question here presented would be a circumstance for consideration in connection with such information as might be gathered

from the documents pertaining to the corporation and its powers and business, the absence of which we have noted. We pass to the evidence adduced on the hearing. Mr. Green testified that "the Westminster Company was organized to relieve Mrs. Green of some of her business and to be able to have her son act for her. We found it difficult to handle business without getting her signature, and we organized the company for the purpose of having more than one officer, so that when I was away we could transact business, and a corporation is a better form of doing it. We handled her business there at the Westminster Company. Mrs. Green came to the Westminster Company from time to time frequently and we transacted business in that way."

Stress was laid upon that evidence in the opinion of the Appellate Division as well as upon a concession made by counsel for the executor on the first hearing in which was involved the question of residence, the substance of which was as follows: " From the date of the death of decedent's husband in 1902 to the time of her own death, the city of New York was the center of decedent's business activities, and while staying at Hoboken she would ordinarily go to New York in the daytime to prosecute her business. During most of this period she had one or more safe deposit boxes in New York city in which from time to time she placed important documents and securities owned by her. She constantly kept large deposits of cash in New York banks. The decedent's interests were largely centered upon the conversion and enlargement of her finances, and practically her entire time and attention was given to business matters and to the investment and reinvestment of her principal and income," and in commenting upon the same the court wrote " the concession thus made was in rather violent contrast with the present attitude of the executor that decedent was not engaged in business in this state at the time of her decease."

1921.]            Opinion, per HOGAN, J.        [231 N. Y. 237]

Further facts in the record which we assume were considered by the Appellate Division important in the case were: The books of the decedent were kept at No. 7 West Ninetieth street, the office of the Westminster Company. The first entry in the account of Mrs. Green on the books of the company was a credit balance under date of December 31st, 1914, which was taken from the books of Mrs. Green which showed that the sum of $24,942,533.54 had up to January 1, 1914, been transferred by decedent to the company. From the very beginning (1911) Mrs. Green assigned practically all of her securities and received credit therefor. In 1914, short term investments were on hand which had been made by Mrs. Green through the company, all of the money being furnished by her to the amount of $7,185,500, no part of which was ever withdrawn. After January 1, 1914, the company made a total amount of new loan aggregating $12,111,190.75, and on July 3d, 1916, the date of decedent's death, the company held sixty-three mortgages all paid for by the money of Mrs. Green aggregating $5,812,000. I have summarized from the opinion the salient facts discussed therein relating to the Westminster Company which evidently contributed materially to the conclusion that the decedent at the date of her death had $23,324,431.18 of capital invested in business within this state in connection with the Westminster Company.

The executor in his testimony with reference to the Westminster Company also stated that during the latter years of the life of Mrs. Green she had nothing to do with the management or direction of the affairs of the company. The securities, other property and moneys taken over from decedent were assigned and transferred to the company, the amount credited to decedent on the books of the company and debited to the company on her books and said amounts were treated as an indebtedness of the company to Mrs. Green. The company did not act as agent for Mrs. Green. The income

from the securities and other property was treated as belonging to the company and from time to time dividends were declared from the income and paid to the stockholders. Mrs. Green received dividends on 630 shares of the capital stock and the balance went to Mr. Green, the present executor.

The ledger account of the company with Mrs. Green appears in the record and discloses a credit in January, 1914, of $24,942,533.54. From the analysis made of the account it appears that such credit was for mortgages, bonds, stocks, cash, certificates of deposit and loans made prior to January, 1914. The account of the Westminster Company in the Seaboard National Bank discloses that on January 1, 1914, the company had a balance on deposit of $2,801,688.30. During that year the company deposited $3,321,379.79 and was credited with $32,210.20 interest. The source of the deposits was given. The account, however, discloses withdrawals by checks during that year amounting to $5,534,151.83, but no explanation was made as to the persons to whom or for what purpose such checks were drawn; whether such explanation would develop facts which might throw light upon the transactions and their relation to the questions under consideration we cannot conjecture. We call attention to the fact as bearing upon the nature of the business carried on by the Westminster Company.

Upon the face of the accounts of the Westminster Company an inference is permissible that the corporation was actively engaged in carrying on the business of the purchase and sale of securities, making investments, loaning money, etc. If as matter of fact it did purchase, hold, sell and transfer securities, make investment, collect income, etc., and distribute the profits amongst its stockholders, the fact that Mrs. Green assigned securities to the company on credit would not affect the relationship between her and the company. The business carried on by a corporation cannot be held to

be that of its individual stockholders. Property unquali-fiedly held by a corporation is owned alone by the corporate body. Stockholders have an interest in the corporation in which they are stockholders, but the business conducted by such corporation is managed and administered by the corporation through a board of directors and the business carried on is solely that of the corporation. (*People* v. *Am. Bell Telephone Co.,* 117 N. Y. 241; *Brock* v. *Poor,* 216 N. Y. 387.) That the decedent in 1911 when the corporation was organized contributed the capital and took shares of stock therefor and by transfer or gift disposed of all but a con-trolling interest in the capital stock is immaterial. As owner of the shares of stock she was privileged to do with them as pleased her. Likewise as owner of property she was at liberty to dispose of the same on credit. In addition the evidence is that during the later years of her life, decedent did not participate in the management or direction of the affairs of the company, that the company did not act as her agent, and that all income was treated as the property of the company and dividends declared and paid to the stockholders, decedent receiving dividends only on the shares of stock held by her and that the corporation acted independently of Mrs. Green. While the nature, amount and frequency of dividends was not inquired into, the evidence does not disclose or admit of inference that the company in making investments was dealing with the property of decedent as agent and turning over to her the entire profit realized from the same, but rather that it was dealing in securities to which it had title, and any profits arising therefrom belonged to and were the property of the corporation. We reach the conclusion that the finding that decedent had capital invested in the Westminster Company and thereby was doing business in this state at the time of her death is unsupported by evidence.

The Windham Realization Company was organized in

1912 under the laws of this state with an authorized capital of $10,000 for the purpose of taking over mortgages belonging to Mrs. Green which were in default. Mrs. Green was not a stockholder in the company, but the capital stock was held in her interest and her son was president of the company.

On May 1, 1909, decedent was the owner of certain mortgages on real estate in the city of New York. Between October 18, 1912, and August 8th, 1915, at various times she transferred by assignment to the Windham Company of such securities, mortgages of the face value as appears on the books of the company of $830,000. Five of said mortgages of face value of $605,000 were foreclosed and the property bid in by the company and held by it at the time of the death of Mrs. Green. Two mortgages of face value of $47,000 were foreclosed and the property sold to outsiders, three mortgages of face value of $178,000 were held by the company at the date of the death of Mrs. Green. The account of decedent on the books of the company discloses a credit to Mrs. Green in addition to the mortgages assigned for cash advanced in 1913 of $26,827.98 and a debit during the years 1913, 1914 and 1915 for cash advanced of $1,921.25, a net credit of cash advanced $24,906.73. The record does not disclose any investigation made with reference to such items. The evidence tends to show the actual value of the assets of the company at the date of the death of decedent, including cash on hand of $82,447.71, was $680,520.40, which amount was adopted by the Appellate Division and held by it as capital invested in business within the state by decedent while doing business in this state. The evidence of the executor was to the effect that the liabilities of the company were $887,906.73 consisting chiefly of accounts payable for mortgages taken over for foreclosure.

The evidence relating to the Windham Company as will be observed was meagre. In some respects it corre-

sponds with the business activities of the Westminster Company. In other respects it may be said in some particulars distinguishable therefrom, but the fact remains that the record does not disclose facts which support the finding that by reason of the evidence developed, Mrs. Green was doing business in this state.

The Appellate Division held that deposits of money in banks, savings banks and trust companies to the credit of decedent, upon which interest was allowed and credited, were taxable.

The deposit of money in a savings bank or trust company and allowances and credit by the depository of interest thereon does not constitute the depositor as one engaged in doing business within this state, within the meaning of the Tax Law. The case cited by counsel for respondent in support of his argument to the contrary (*Matter of Romaine*, 127 N. Y. 80) is not in point. The statute considered in that case imposed a tax on all property within the state irrespective of the owner thereof doing business in the state.

The decedent held a mortgage on property in the city of New York to secure the payment of $55,000. December 24th, 1914, the time of payment of the mortgage was extended for three years. The Appellate Division held that decedent had such amount of capital invested in this state at the time of her death. Conceding such fact our conclusion that the evidence is insufficient to establish that decedent was doing business in the state renders further comment as to that item unnecessary.

Our determination results in a reversal of the order of the Appellate Division, the effect of which is an affirmance of the order of the surrogate. We are thereby precluded from remitting the proceeding to that officer for further hearing or more complete investigation. The remedy of the state, if any in the way of a rehearing, is to be found under the provisions of section 232 of the law to secure a rehearing.

The order of the Appellate Division should be reversed, with costs in this court and the Appellate Division, and that of the surrogate affirmed. The order being a final order, the questions submitted are not answered.

HISCOCK, Ch. J., CHASE, CARDOZO, MCLAUGHLIN and ANDREWS, JJ., concur; POUND, J., not voting.

Ordered accordingly.