**BOISE CASCADE CORPORATION,
Plaintiff,**

v.

**E. Todd WHEELER and the Perkins &
Will Partnership, Defendants.**

**No. 75 Civ. 6072–LFM.**

United States District Court,
S. D. New York.

Sept. 10, 1976.

---

4. *United States v. Telfaire,* 152 U.S.App.D.C. 146, 469 F.2d 552, 557 (1972).

5. Petitioner's Opening Brief at 9.

Hart & Hume, and Bernstein, Weiss, Parter, Coplan & Weinstein, New York City, for defendant The Perkins & Will Partnership by Joseph A. Bergadano, Norman Coplan and Barbara W. Thompson, New York City.

Reid & Priest, New York City, for plaintiff by Louis H. Willenken, New York City.

## OPINION

MacMAHON, District Judge.

Defendants E. Todd Wheeler and The Perkins & Will Partnership (hereinafter referred to collectively as "Perkins & Will" or "Architect") move, pursuant to Rules 12(b) and 19, Fed.R.Civ.P., to dismiss the amended complaint for plaintiff's failure to join an indispensable party plaintiff whose joinder would destroy diversity jurisdiction in this case.

Plaintiff Boise Cascade Corporation ("Boise") is a Delaware corporation having its principal place of business in Idaho. Perkins & Will is a partnership of architects, none of whose members are citizens of Delaware or Idaho. Several partners, however, are citizens of New York. Per-

kins & Will asserts on this motion that Walter Kidde Constructors Incorporated ("Kidde"), an existing New York corporation, is the real party in interest and an indispensable party to this suit.

■ It is well settled that, for purposes of diversity jurisdiction, a partnership is a citizen of each state of which a general partner is a citizen [1] and a corporation is a citizen of the state of incorporation and the state where its principal place of business is located.[2] Thus, if Kidde, the New York corporation, is an indispensable party plaintiff, it cannot be joined because diversity will be destroyed since several members of Perkins & Will, the defendant partnership, are also citizens of New York and the complaint must therefore be dismissed.

In order to place this motion in proper context, a review of the factual background of the suit is necessary.[3] On October 29, 1968, Kidde made a written contract with the Mt. Sinai Hospital of Hartford, Connecticut (the "Hospital") to act as general contractor on a certain construction project. Paragraph 46 of the General Conditions of that contract forbade Kidde from assigning "the whole or any part of this contract or any monies due or to become due hereunder without the written consent" of the Hospital. Perkins & Will acted as the architect for this project.

During the course of construction, a number of differences and disputes arose, resulting in Kidde's making various claims for money due because of "changes, extras, and delays." Pursuant to the contract, arbitration proceedings between Kidde and the Hospital were commenced on Kidde's claim for $9,645,787.

While these proceedings were pending, the Hospital, on April 20, 1973, demanded arbitration with Perkins & Will, stating as the nature of the dispute "[t]he arbitration instituted by Walter Kidde Constructors Inc. against the Mt. Sinai Hospital . . . ." and claiming for relief "[s]o much of damages claimed by Walter Kidde Constructors Inc. which were the fault of the Architects and their Engineers."

Through various proceedings in the New York courts, the two arbitrations were consolidated. Thus, Perkins & Will stands as a "third party defendant" to the Hospital in the consolidated Kidde-Hospital-Architect arbitration.

Arbitration hearings commenced in September 1975 but were suspended in November 1975 as a result of the disqualification of one of the arbitrators by the Supreme Court, New York County. That arbitration has not yet recommenced.

The within action, asserting a direct claim by Boise against the Architect for $10 million in compensatory damages and $10 million in punitive damages, was commenced on December 5, 1975.[4] The amended complaint alleges that Boise:

"was at all times mentioned in this complaint, by itself and another corporation merged into Boise, sole stockholder of Walter Kidde Constructors Incorporated ('Kidde') until February 1973; was responsible for the completion of construction and any losses arising out of a Kidde contract to construct a hospital in Hartford, Connecticut (hereafter 'Project'), and is entitled to the proceeds and is responsible for the expenses of all claims arising out of the Project." [5]

It is this assertion of "responsibility" and "entitlement" which is the basis for Boise's contention that it is the sole real party in interest in this action and which Perkins & Will disputes on this motion.

1. *Great Southern Fire Proof Hotel Co. v. Jones,* 177 U.S. 449, 20 S.Ct. 690, 44 L.Ed. 842 (1900); *Lewis v. Odell,* 503 F.2d 445 (2d Cir. 1974); C. A. Wright, Law of Federal Courts § 27 (2d ed. 1970).

2. 28 U.S.C. § 1332(c).

3. The following facts appear in the pleadings and the papers submitted on this motion and are undisputed.

4. The gravamen of the amended complaint is the Architect's alleged fraud and negligence.

5. Amended Complaint ¶ 2.

As we have noted, Kidde contracted with the Hospital in October 1968. At that time, Ebasco Industries Inc. ("Ebasco"), a New York corporation, was the sole stockholder of Kidde. In April 1969, Ebasco was merged into Boise, which thereupon became Kidde's sole stockholder. Boise sold all of Kidde's stock to A. M. Kinney, Inc. ("Kinney") on February 2, 1973, pursuant to a written sale agreement (the "Sale Agreement") signed by Boise and Kinney, but not by Kidde.

To support its contention that it is the "owner" of the claims asserted here, Boise depends upon certain provisions in the Sale Agreement which provide in pertinent part:

> "10. *Assets and liabilities.* All assets and liabilities of Kidde, and its subsidiaries, as of the time of this sale, shall belong to and be assumed by [Boise].
>
> . . .
>
> 11. *Claims.* All existing and future claims by and against Kidde arising out of work performed by Kidde . . . prior to time of closing of this sale . . shall be litigated or arbitrated, or defended against by [Boise], at its expense, in the name of Kidde. [Boise] shall be entitled to all net and after-tax proceeds from said claims and shall be liable to Kidde and [Kinney] for all damages adjudged, decreed, awarded, or assessed against Kidde or [Kinney] in connection with said claims. . . .
>
> 12. *Unperformed Contracts.* [Kinney] and [Boise] recognize the existence of four categories of wholly or partly unperformed contracts to which Kidde, and/or any of its subsidiaries, is now a party.
>
> (a) Contracts that [Boise] desires Kidde to complete or cause to be completed, for [Boise's] account, namely, Mt. Sinai Hospital . . . ."

Boise contends that, by virtue of these provisions, it "retained" substantially all of Kidde's assets and liabilities, including the claims arising from the Hospital project. Perkins & Will disagrees, asserting that Boise cannot "retain" what it never owned; that is, the claim asserted in this action

belonged to the contracting party, Kidde, an existing legal entity under New York law, which at no time signed, adhered to, or acquiesced in the Sale Agreement, nor assigned these claims in any other way. According to defendants, therefore, Kidde is an indispensable party to this action.

Rule 19(a), Fed.R.Civ.P., describes a person needed for just adjudication as one who should be joined if:

> "(1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest."

It is readily apparent that Kidde would be a "proper party" to this action if joinder were permissible. It, and not Boise, entered the construction contract, and an arbitration proceeding in Kidde's name is presently pending against the Hospital in which the Architect has been joined as a party. Plaintiff asserts, however, that for a number of reasons Kidde is neither "necessary" nor "indispensable" to this action.

First, Boise claims that, as sole stockholder of Kidde from 1969 to 1973, it had the right to do whatever it pleased with the corporate property of Kidde, which would include all claims arising from the Hospital project, and, therefore, it was entitled to "retain" these claims in the Sale Agreement.

■ This argument falls before the long-standing principle of New York law that a corporation's property rights are entirely distinct from those of its shareholders and that

> "even complete ownership of capital stock does not operate to transfer the title to corporate property and that ownership of capital stock is by no means identical

with or equivalent to ownership of corporate property." [6]

■ Plaintiff next contends that Kidde acted, at least some of the time, as a "dummy" and that Boise performed a substantial portion of the work. In this respect, Boise is asking us to "pierce the corporate veil" in order to find that it is the sole party in interest. However, it is axiomatic that a corporation is a "creature of the law, endowed with a personality separate and distinct from that of its owners" and that the "dual personality of parent and subsidiary is not lightly disregarded." [7]

■ In any event, Boise's contention is irrelevant, for under New York law

"the corporate veil is never pierced for the benefit of the corporation or its stockholders. The procedure is only permissible against a purported stockholder who is using the corporate veil to defraud. * * * A sole stockholder receives the same protection and immunities that stockholders of multi-owned corporations enjoy. He is also subject to the same disadvantages. He is not the corporation either in law or fact and, having elected to take the advantages, it is not inequitable to subject him to the disabilities consequent upon his election." [8]

■ Plaintiff's next argument is that it has been authorized by Kidde to pursue these claims. Although Boise admits that Kidde was not a party to the Sale Agreement and that Kidde never formally assigned any claims to Boise, Boise points to two resolutions by Kidde's board of directors appointing Boise employees as Kidde vice-presidents to pursue claims arising from the construction project. Plaintiff, however, misreads the clear wording of these resolutions which state that the

"authority, powers and duties as such Vice President shall be limited to the matter of discharging the obligations and pursuing the rights of *this corporation* [i. e., Kidde] relative to completing [the Hospital construction project]. . . ." [Emphasis added.]

By their own terms, the resolutions grant the Boise employee authority to pursue *Kidde's* claims and therefore do not purport to transfer them to anyone.

Finally, Boise asserts that, whatever lack of legal formality has occurred in its "assumption" of Kidde's apparent rights in this matter, Kidde's citizenship should be ignored for diversity purposes, even if it should be joined, because it would merely be a nominal party. This argument, which displays a flippant disregard for the well-settled principles of law already stated, is also unavailing.

As we noted earlier, the Kidde-Hospital-Architect arbitration was suspended because of the disqualification of one of the arbitrators. The reason for that disqualification was that the arbitrator disclosed that he had previously worked for Boise, after it became apparent that Boise claimed some interest in the outcome of the proceeding.

In an affidavit filed with the Appellate Division, First Department, in opposition to the disqualification of the arbitrator, Kidde's counsel (who is also Boise's counsel in the present action) stated that Boise is "a company which has an *indirect interest* in the outcome of the case and which contacts were not recent, nor continuing, *nor substantial*." [Emphasis added.] This affidavit further stated that

"Kidde was not a party to the sale agreement between Boise and Kinney and made no assignment to anyone of its claims against the Hospital. Under the

6. *Torrey Delivery, Inc. v. Chautauqua Truck Sales & Serv., Inc.*, 47 A.D.2d 279, 282, 366 N.Y.S.2d 506, 510 (4th dep't 1975), quoting from *Brock v. Poor*, 216 N.Y. 387, 401, 111 N.E. 229 (1915). See also *Connecticut General Life Ins. Co. v. Superintendent of Insurance*, 10 N.Y.2d 42, 50, 217 N.Y.S.2d 39, 176 N.E.2d 63 (1961); *Matter of Green*, 231 N.Y. 237, 246–247, 131 N.E. 900 (1921); *People v. American*

*Bell Telephone Co.*, 117 N.Y. 241, 255, 22 N.E. 1057 (1889).

7. *Berger v. Columbia Broadcasting System, Inc.*, 453 F.2d 991, 994 (5th Cir. 1972).

8. *Colin v. Altman*, 39 A.D.2d 200, 202, 333 N.Y.S.2d 432, 433–434 (1st dep't 1972).

terms of said sale agreement, the relationship between Kidde and the Hospital remained untouched."

Also submitted was a sworn affidavit by a senior vice-president of Boise, which states that

"the sale of the stock of Kidde by Boise to Kinney in February of 1973 occurred four years and four months after the contract between Kidde and the Hospital. * * * The claimant [Kidde] is still the same viable legal entity that entered into the contract with the Hospital and is still engaged in construction work."

Boise has been unable to explain how it can maintain that only Kidde has a direct interest in the arbitration proceeding in the claims against the Hospital and that only Boise has a direct interest in the claims in this action against the Architect, although all of the claims arose from the same construction project as a result of "delays, changes, and extras."

█ We do not mean to intimate by the foregoing that Boise has absolutely no right to assert its claims for relief in this action.[9] We do find, however, that Kidde also appears to have rights in this matter, rights which seem to be so inextricably intertwined with those asserted by Boise that any disposition on the merits in Kidde's absence may impair Kidde's ability to protect its own interests and/or subject the Architect to multiple liability. Thus, Kidde is an entity which should be joined, pursuant to Rule 19(a), Fed.R.Civ.P., for a just adjudication of this matter.

Since Kidde cannot be joined as a party plaintiff without ousting the court of jurisdiction, we must determine whether "in equity and good conscience the action should proceed."[10] After due consideration of all relevant circumstances, we conclude that it should not.

If Boise were to succeed against the Architect here, the effect upon Kidde's claims in arbitration, to which Perkins & Will is a party, is, to say the least, uncertain. A recovery here might either restrict Kidde's recovery, if any, in that proceeding or subject the Architect to dual liability. So, also, if Perkins & Will should prevail in this action, Kidde's claims in arbitration could be adversely affected.

Thus, it appears that any judgment rendered in this suit might be prejudicial to Kidde and/or the Architect. We can conceive of no way, short of requiring Kidde's joinder, to alleviate this prejudice. Furthermore, there has been no argument by Boise that a dismissal in this suit would leave it without a remedy. Apparently, it could commence a new action in the New York courts, joining Kidde as a party.

We conclude, for the foregoing reasons, that Kidde is an indispensable party plaintiff to this action which cannot be joined without destroying the diversity jurisdiction of the court. This action must, therefore, be dismissed.

Accordingly, defendants' motion to dismiss this action, pursuant to Rules 12(b) and 19, Fed.R.Civ.P., is granted.

So ordered.

---

**9.** To do so would require us to inquire into the validity of the Sale Agreement. This, of course, is not an issue properly before us, nor could it be in the absence of Kinney and Kidde.

**10.** Rule 19(b), Fed.R.Civ.P.