**BROSS UTILITIES SERVICE CORP., the Theodore D. Bross Line Construction Corporation, Plaintiffs,**

v.

**Abdulla Fouad A. ABOUBSHAIT, Abdulla Fouad A. Aboubshait Establishment, Fouad Abdulla Fouad, Fouad Abdulla Fouad Corporation, Defendants.**

No. 81 Civ. 6972 (JES).

United States District Court, S.D. New York.

Oct. 9, 1985.

Mark C. Yellin, West Hartford, Conn., for plaintiffs.

Chadbourne, Parke, Whiteside & Wolff, New York City, for defendants; Stuart D. Baker, Donald I. Strauber, James C. La-Forge, of counsel.

## OPINION AND ORDER

SPRIZZO, District Judge:

### BACKGROUND

In March of 1974, plaintiff, The Theodore D. Bross Line Construction Corp. ("Bross Line"), received a letter from S.S. Ayntrazi, managing director of the Electrical and Instrumentation Division of Abdulla Fouad in Saudi Arabia, concerning possible "cooperation" between that company and Bross Line with respect to work related to the generation, transmission, and distribution of electrical power. Bross Line, a Connecticut corporation, is a wholly-owned subsidiary of plaintiff Bross Utilities Service Corp. ("Bross Utilities"), a holding company and also a Connecticut corporation.

Plaintiffs entered into extensive negotiations with defendants Abdulla Fouad A. Aboubshait ("Fouad") and Fouad Abdulla Fouad, both Saudi Arabian citizens, regarding the project.[1] In January of 1975, Bross Utilities incorporated a wholly-owned subsidiary in Grand Cayman Islands, British West Indies, named Bross International, Ltd. ("Bross International"), and, in April of 1975, Bross International, defendant Fouad Establishment and Emeco Interna-

---

1. Other defendants are Abdulla Fouad A. Aboubshait Establishment ("Fouad Establishment"), a Saudi Arabian corporation of which defendant Fouad is chairman and sole shareholder, and Fouad Abdulla Fouad Corp., another Saudi Arabian corporation of which defendant Fouad Abdulla Fouad is chairman and sole shareholder.

tional Engineers Contractors ("Emeco"), a Lebanese company, entered into an "Association Agreement" to form a joint venture company in accordance with the laws of Saudi Arabia, called Fouad Bross Emeco-Electrical Engineers, Contractors ("FBE"). The company was formed in accordance with the terms of the Association Agreement.

The stated business of FBE was to "carry out operations involved in the fabrication, construction, erection, commissioning and maintenance of electrical works related to generating plants, substations, transmission and distribution lines and related services." *See* Ex. B to Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment ("Pl. Memo. in Opp.") at 1 ("Association Agreement"). The FBE agreement and subsequent by-laws provided that Fouad Establishment would have a 50% interest in the profits of FBE, and that Bross International and Emeco would have 31.5% and 18.5% interests respectively. FBE would be managed by its board of directors, with two directors to be appointed by Bross International and one each by Fouad Establishment and Emeco. *Id.* at 4. In 1976, Fouad Establishment and Bross International removed Emeco from the joint venture and continued working under the name Abdulla Fouad & Bross ("Fouad & Bross").

Plaintiffs have sued defendants for alleged breaches of (1) the FBE/Fouad & Bross joint venture, and (2) an alleged overarching oral partnership agreement between plaintiffs and defendants. Defendants have moved for summary judgment pursuant to Fed.R.Civ.P. 56, on the ground that there is no factual support for the claim of an oral agreement, and that plaintiffs cannot sue for violations of either the FBE or Fouad & Bross agreements, as they were not parties to those contracts.

Plaintiffs contend that summary judgment is improper because (1) the separate corporate existence of Bross International can be disregarded to allow plaintiffs, the real parties in interest to the FBE joint venture, to assert claims against defendants with respect to the FBE joint venture; (2) Fouad & Bross was a joint venture undertaken directly between defendants and plaintiffs; and (3) there is a genuine issue of material fact as to whether an overarching oral partnership agreement exists between plaintiffs and defendants with respect to the joint venture.[2]

## DISCUSSION

### 1. Breach of the FBE Agreement

The Court agrees with defendants that plaintiffs cannot assert any claims based upon breach of the FBE joint venture agreement. Plaintiffs concede that Bross International, the foreign subsidiary of Bross Utilities, was the only Bross company party to that agreement. The contract refers only to Bross International, and is subscribed only by Bross International. Plaintiffs contend, however, that Bross International is merely a shell corporation created for tax purposes and that plaintiffs were the real parties in interest with respect to the contract with defendants. Therefore, they argue that the Court should pierce the corporate veil between Bross Utilities and Bross International and allow plaintiffs to assert any claim of Bross International arising from the joint venture with defendants.

Plaintiffs' argument clearly lacks merit. The deposition testimony of plaintiffs' own officers, some of whom were also officers of Bross International, demonstrates that while Bross Line was the party originally contacted by defendants, and while plaintiffs engaged in negotiations with defendants, plaintiffs chose to create a subsidiary to enter into the written agreement with defendants.

■ Plaintiffs have cited no authority for their contention that they should be

**2.** Plaintiffs originally claimed to be successors in interest to Bross International. The Amended Complaint deleted this contention.

permitted to disregard the separate corporate existence of Bross International in order to sue defendants. It is well-established that, under New York law,[3] "a corporation is a 'creature of the law, endowed with a personality separate and distinct from its owners' and ... the 'dual personality of parent and subsidiary is not lightly disregarded.'" *See Boise Cascade Corp. v. Wheeler,* 419 F.Supp. 98, 102 (S.D.N.Y. 1976), *aff'd without opinion,* 556 F.2d 554 (2d Cir.1977) (quoting *Berger v. Columbia Broadcasting System, Inc.,* 453 F.2d 991, 994 (5th Cir.1972)). A parent corporation cannot create a subsidiary corporation and then ignore the separate corporate existence of that subsidiary whenever it would be advantageous to the parent. *See, e.g., Carey v. National Oil Corp.,* 592 F.2d 673, 676 (2d Cir.1979); *In re Beck Industries, Inc.,* 479 F.2d 410, 418 (2d Cir.1973); *Commissioner of Internal Revenue v. Schaefer,* 240 F.2d 381, 383 (2d Cir.1957).

Thus, the courts will not allow a *parent* to pierce the corporate veil it created for its own benefit, so as to assert the claims of its subsidiary. *See, e.g., Carey, supra,* 592 F.2d at 676; *Coast Manufacturing Co. v. Keylon,* 600 F.Supp. 696, 698 (S.D.N.Y.1985); *Boise Cascade, supra,* 419 F.Supp. at 102; *Colin v. Altman,* 39 A.D.2d 200, 202, 333 N.Y.S.2d 432, 433–34 (1st Dept.1972); *Ipco Hospital Supply Corp. v. Consolidated Edison Co.,* 100

Misc.2d 789, 791, 420 N.Y.S.2d 78, 80 (Sup. Ct.1979). "[That] procedure is only permissible *against* a purported stockholder who is using the corporate veil to defraud." *See Boise Cascade, supra,* 419 F.Supp. at 102 (quoting *Colin, supra,* 39 A.D.2d at 202, 333 N.Y.S.2d 433) (emphasis added).

Plaintiffs' allegation that Bross International was a shell corporation created solely for tax purposes is irrelevant. In *Boise Cascade, supra,* the court rejected plaintiff's argument that it could assert the claims of a corporation of which it was sole shareholder, because plaintiff alleged that the corporation was a "dummy" and that plaintiff had performed the corporation's obligations under a contract between the corporation and defendant. The *Boise Cascade* court noted that stock ownership is not equivalent to ownership of corporate property, including the corporation's claims under a contract. *See id.* at 101–02.

This result is unaffected by the circumstance that Bross International has apparently been dissolved, or that Bross Utilities may have guaranteed performance of contracts entered into by FBE.[4] It is also irrelevant that plaintiffs may have performed work under the FBE agreement on behalf of Bross International. This is a common practice in parent/subsidiary relationships, which does not create a contractual relationship between plaintiffs and defendants.[5]

---

3. The Court assumes that New York law is applicable in this case. While plaintiffs are both Connecticut corporations and defendants are all foreigners, no party has asserted that any law other than that of New York should govern this action, nor has any proof of foreign law been submitted. Therefore, the Court will apply the law of the forum. *See, e.g., O'Rourke v. Eastern Air Lines, Inc.,* 730 F.2d 842, 846–47 (2d Cir. 1984); *Vishipco Line v. Chase Manhattan Bank, N.A.,* 660 F.2d 854, 860 (2d Cir.1981), *cert. denied,* 459 U.S. 976, 103 S.Ct. 313, 74 L.Ed.2d 291 (1982); *Rinieri v. News Syndicate Co.,* 385 F.2d 818, 820 n. 3 (2d Cir.1967).

4. Plaintiffs have argued for the first time in their post-argument papers that the guarantee by Bross Utilities of a contract entered into by FBE with Arabian American Oil Co. constituted an amendment of the FBE agreement adding Bross Utilities as a "direct party" to the FBE

joint venture. This claim is not stated in the complaint. However, it is clear that merely furnishing a guarantee does not make the guarantor a partner of the partnership whose performance the guarantor has guaranteed.

5. *Funds of Funds, Ltd. v. Arthur Andersen & Co.,* 545 F.Supp. 1314 (S.D.N.Y.1982), cited by plaintiffs as authority for their contention that a parent may assert the claims of its subsidiary, is clearly inapposite. In that case the court noted that the subsidiary had assigned its rights to the parent and had agreed that the parent should pursue the subsidiary's claims against the defendants. *See id.* at 1371.

The Court would also have no subject matter jurisdiction were Bross International named as plaintiff, as the action would then be one solely between aliens. *See, e.g., Corporacion Venezolana de Fomento v. Vintero Sales Corps.,* 629 F.2d 786, 790 (2d Cir.1980), *cert. denied,* 449 U.S.

### 2. Breach of Fouad & Bross Agreement

Plaintiffs claim that Fouad & Bross, the joint venture created when Emeco was removed from FBE in or about September of 1976, was a "direct" contract between plaintiffs and defendants. Plaintiffs' own deposition testimony and the other documents before the Court demonstrate, however, that the change from FBE to Fouad & Bross was, in effect, merely a change of name reflecting the removal of Emeco from the joint venture, and that Bross International, not Bross Line or Bross Utilities, was the actual party to the Fouad & Bross contract. There is no evidence of any contract between plaintiffs and defendants.[6] Therefore, for the same reasons as noted above with respect to the claims based on the FBE agreement, plaintiffs cannot sue on any claims of Bross International arising from the Fouad & Bross joint venture.

### 3. Overarching Oral Partnership

Plaintiffs allege that, in addition to the written joint venture agreements to which Bross International was a party, there existed an overarching oral partnership agreement between plaintiffs themselves and defendants, which defendants breached. According to plaintiff, this agreement was entered into at some time prior to the creation of Fouad & Bross, and apparently at about the same time as the creation of FBE. To support this contention, plaintiffs point to the initial contact of plaintiff Bross Line by defendants, the correspondence and negotiations between plaintiffs and defendants, and the fact that plaintiffs allegedly performed all of Bross International's obligations under the written agreements.

Plaintiffs argue that, given these facts, this case is substantially similar to *Louis Dreyfus Corp. v. ACLI International, Inc.,* 52 N.Y.2d 736, 417 N.E.2d 562, 436 N.Y.S.2d 268 (1980), wherein the New York State Court of Appeals recognized an overarching oral partnership agreement between two parent corporations to share profits under a partnership contract between their subsidiaries. The *Dreyfus* court held that a merger clause in the written contract between the subsidiaries did not bar enforcement of the separate oral agreement between the parents which contained material terms not encompassed by the written contract. *Id.* at 739, 417 N.E.2d at 563, 436 N.Y.S.2d at 269.

The deposition testimony of plaintiffs' own witnesses demonstrates, however, that *Dreyfus* is inapposite to this case. Plaintiffs do not allege that an oral agreement differing in its terms from the FBE agreement existed between plaintiffs and defendants. Rather, they argue that the oral agreement was exactly the same as the FBE agreement and encompassed the same terms, but that plaintiffs, rather than Bross International, were involved. Moreover, the testimony of plaintiffs' own witnesses clearly established that there is no factual support for such an oral agreement,

---

1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981); *ITT v. Vencap Ltd.,* 519 F.2d 1001, 1015 (2d Cir. 1975).

**6.** While plaintiffs argue that Peter Olsen, senior vice-president and director of both plaintiffs and president of Bross International, testified that Bross Utilities, rather than Bross International, was a party to the Fouad & Bross venture, this clearly misrepresents Olsen's testimony. Although Olsen stated that Bross Utilities was the real party in interest to the Fouad & Bross venture, on cross-examination he conceded that he probably signed the Fouad & Bross agreement on behalf of Bross International, although he could not be sure without seeing the actual contract to refresh his recollection. *See* Olsen Deposition at 152. Indeed, Mr. Olsen admitted that, although everything he did was for Bross Utilities, Bross International was used as a vehicle for tax reasons. The parties have not submitted to the Court the Fouad & Bross contract, but every other document submitted regarding Fouad & Bross, including documents signed by Mr. Olsen, refer to Fouad & Bross as a partnership to which only Bross International was a party. Plaintiffs' failure to produce a Fouad & Bross contract signed by Bross Utilities supports the conclusion that that was very likely true of that contract as well. In any event, in the absence of any oral or written evidence establishing that the Fouad-Bross contract was signed on behalf of Bross Utilities, the Court must reject plaintiffs' contention that there is a material issue of genuine fact as to whether Bross Utilities or Bross International was party to the Fouad & Bross contract.

even if one had been alleged. Eugene Bross, president of both Bross Utilities and Bross Line, testified that no other joint venture agreement existed but the written FBE and Fouad & Bross contracts. Indeed, he conceded that Bross Utilities and Bross Line intended to carry out the business with defendants through Bross International, which was formed for tax purposes. Theodore Bross, Chairman of the Board of Bross Utilities and former president and Chairman of Bross Line, also testified that there was only one agreement between all the parties, made through Bross International for tax purposes. Joseph Kelly, vice-president of Bross Lines, likewise testified that the only agreements which existed were the written agreements, which were made through Bross International and which incorporated all prior agreements which had been reached during negotiations between the parties.[7]

Therefore, to permit plaintiffs to sue on an oral partnership theory on the facts of this case would in effect nullify the rule which prevents a parent corporation from ignoring or bypassing the separate corporate existence of its subsidiary for its own benefit, because any corporation which negotiated with another party, but used a subsidiary to contract with that party, could claim that, in addition to the written contract, there existed an overarching oral partnership identical to the written contract to which the parent was a party. Such a holding would clearly subvert the policies, reflected in the cases cited above, which refuse to permit a piercing of the corporate veil for the benefit of a parent corporation.

It is therefore clear that defendants are entitled to summary judgment on this claim. Plaintiffs are correct in asserting that were there any genuine issue of material fact as to whether the alleged oral partnership existed, the Court would have to deny summary judgment. *See, e.g.,* Fed. R.Civ.P. 56; *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980). The Court also recognizes that it "must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought." *See, e.g., Quinn, supra,* 613 F.2d at 445 (quoting *Heyman v. Commerce & Industry Insurance Co.,* 524 F.2d 1317, 1320 (2d Cir.1975)). However, it is also clear that on a motion for summary judgment, where defendant has established that no genuine issues of material fact exist, plaintiff cannot merely rely on the allegations of the complaint, *see, e.g., Gatling v. Atlantic Richfield Co.,* 577 F.2d 185, 187 (2d Cir.), *cert. denied,* 439 U.S. 861, 99 S.Ct. 181, 58 L.Ed.2d 169 (1978); *Dressler v. MV Sandpiper,* 331 F.2d 130, 132–33 (2d Cir.1964), but must put forth facts to support his claims. *See, e.g., Research Automation, supra,*[7] 585 F.2d at 33; *Gatling, supra,* 577 F.2d at 187; *Beal v. Lindsay,* 468 F.2d 287, 291 (2d Cir.1972).

Plaintiffs have failed to meet this burden. Despite being afforded repeated opportunities by the Court to do so, plaintiffs have submitted no evidence to support their contention that there was any agreement in addition to the written FBE/Fouad & Bross contracts. In the face of the deposition testimony of plaintiffs' officers,

7. The Court rejects plaintiffs' latest theory, argued for the first time in its post-argument papers, that the FBE agreement in fact covered only work to be done in Saudi Arabia, but not any work done outside that country, and that a separate oral agreement existed between plaintiffs and defendants with respect to the work required to be done in the United States and elsewhere. As noted above, the plaintiffs' own officers testified that there was only one agreement, and that it was embodied in the written contracts. The deposition testimony and documents submitted by the parties provide absolutely no support for plaintiffs' new argument regarding separate agreements for work done inside and outside Saudi Arabia. Indeed, it demonstrates that work done in the United States was part of the duties of Bross International under the joint venture agreements. Plaintiffs cannot defeat summary judgment by raising an "issue" so late in the proceedings for which they have offered no factual support. *See, e.g., S.E.C. v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978); *Gatling v. Atlantic Richfield Co.,* 577 F.2d 185, 188 (2d Cir.), *cert. denied,* 439 U.S. 861, 99 S.Ct. 181, 58 L.Ed.2d 169 (1978).

which contradicts the claim of a separate oral partnership, plaintiffs' counsel's argument that such an agreement existed and could be proved at trial is insufficient to defeat a motion for summary judgment.

While the selective reading of the affidavits or depositions which plaintiffs advocate might create the illusion of an issue of fact as to the existence of an oral agreement, a consideration of all of the evidence demonstrates that there are no genuine issues of material fact requiring a trial. Contrary to plaintiffs' contention, the Second Circuit has rejected the rule that summary judgment is appropriate only where there is not the "slightest doubt" as to the facts. *See, e.g., Gatling, supra,* 577 F.2d at 188; *Beal, supra,* 468 F.2d at 291; *cf. Quinn, supra,* 613 F.2d at 445. Therefore, summary judgment in favor of defendants is proper, and shall be entered accordingly.[8]

It is SO ORDERED.

---

**8.** In a statement submitted pursuant to Rule 3(g) of the Civil Rules of the United States District Courts for the Southern District of New York, plaintiffs state that they also assert claims arising from interference by defendants with the contractual relationship of Bross Utilities with Arabian American Oil Co. The amended complaint makes clear, however, that these allegations are premised on the claim that Bross Utilities was a party to the FBE joint venture and to the contract which Arabian American Oil Co. awarded to FBE and which Bross Utilities guaranteed. The Court has rejected this claim. Plaintiffs state that they also sue for interference by defendants with the contractual relationship between Bross Line and its employees in the United States. Once again, the amended complaint makes clear that plaintiffs allege that defendants interfered with the *joint venture* workforce. Since the Court has concluded that Bross Line was not a party to the joint venture, this claim must be dismissed.