NICHOLAS A. CALIFANO, M.D.,
INC., Plaintiff,

v.

SHEARSON LEHMAN BROTHERS
INC. and Kenneth Bolton,
Defendants.

No. 88 Civ. 2322 (LFM).

United States District Court,
S.D. New York.

Aug. 9, 1988.

Shearson Lehman Hutton Inc., Office of General Counsel by Jane E. Booth, New York City, for Shearson Lehman Bros. Inc.

Friedland, Laifer and Robbins by Spencer Robbins, New York City, for Kenneth Bolton.

Weisberg & Berns by David E. Weisberg, New York City, for Nicholas A. Califano, M.D., Inc.

## OPINION

MacMAHON, District Judge.

Defendants Shearson Lehman Brothers Inc. ("SLB") and Kenneth Bolton ("Bolton") move for an order staying this action and compelling arbitration, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–14 (1982).

## BACKGROUND

This action was brought under federal and state securities laws to recover losses allegedly caused by defendants' unauthorized transfer of plaintiff's holdings to a margin account.

Plaintiff Nicholas A. Califano, M.D., Inc. ("the Corporation") is a professional corporation whose president, sole shareholder and designated employee is Dr. Nicholas A. Califano ("Califano"), a physician practicing medicine.

In 1984 Califano opened an account with SLB in his own name ("personal account"). At the time he opened the personal account, Califano executed a customer's agreement with SLB, which provided, in

part, that "any controversy arising out of or relating to my accounts, to transactions with you for me or to this agreement or the breach thereof, shall be settled by arbitration...."

In March 1987, Califano opened an account with SLB in the Corporation's name ("corporate account"). Although SLB's employee, Joseph A. Carannante ("Carannante"), states in an affidavit that some version of the customer agreement would have been mailed to the Corporation routinely upon the opening of the account, SLB has no record of sending the agreement and no such agreement was ever executed for the corporate account.

Nonetheless, defendants contend that the customer agreement executed by Califano for his personal account requires arbitration of the instant dispute concerning the corporate account. Alternatively, in their reply brief,[1] defendants contend that because Califano continued to trade on behalf of the Corporation after receiving the customer agreement, the Corporation is now bound by the arbitration clause.

## DISCUSSION

■ Although the Federal Arbitration Act established a federal policy favoring arbitration, there must first be an agreement to arbitrate. "Arbitration is a matter of contract, and parties cannot be required to submit to arbitration any dispute which they have not agreed to submit."[2] It is for the Court to decide which parties are bound by an arbitration agreement, and ordinary contract principles govern this determination.[3]

No customer's agreement was executed on behalf of the Corporation. Defendants' contention that the arbitration clause in the customer's agreement signed by Califano for his personal account also applies to the corporate account is untenable.

■ A corporation is an entity distinctly separate from its shareholders.[4] The mere fact that Califano is the sole shareholder of the Corporation is not sufficient to pierce the corporate veil.[5] Courts do not lightly disregard the corporate entity even in deference to the strong policy favoring arbitration.[6] Accordingly, Califano's personal agreement with SLB would not ordinarily bind the Corporation.

■ We also reject defendants' alternate contention that plaintiff is bound by the arbitration clause because the Corporation continued to trade without protest after receiving the customer agreement for the corporate account.

First, it is not at all clear that the Corporation ever actually received a customer's agreement. Carannante's averment that it was the "practice and procedure" of SLB to send a customer's agreement with other account documents[7] falls far short of establishing that any agreement was sent to the Corporation, let alone received. Moreover, Carannante could not even determine which of nine possible versions of the customer's agreements would have been sent, casting further doubt on what, if anything, plaintiff received.

Second, assuming that Califano received the agreement for the corporate account, we conclude that plaintiff cannot be bound by it without having signed it. Although

---

1. Defendants did not raise the argument that receipt of the agreement alone bound plaintiff to arbitration in their main brief. Whether by oversight or strategy, this conduct deprived plaintiff of the opportunity to respond. We caution defendants to be more attentive to the dictates of Rule 11 and their obligations as officers of the court in the future.

2. *Oriental Commercial & Shipping Co. v. Rosseel, N.V.,* 609 F.Supp. 75, 78 (S.D.N.Y.1985).

3. *Reyes Compania Naviera S.A. v. Manumante S.A.,* 649 F.Supp. 789, 791 (S.D.N.Y.1986).

4. *Wren Distributors, Inc. v. Phone–Mate, Inc.,* 600 F.Supp. 1576, 1579 (E.D.N.Y.1985); *Boise Cascade Corp. v. Wheeler,* 419 F.Supp. 98, 102 (S.D.N.Y.1976), *aff'd,* 556 F.2d 554 (2d Cir.1977).

5. *Wren Distributors, Inc., supra,* 600 F.Supp. at 1579; *Boise Cascade Corp., supra,* 419 F.Supp. at 102.

6. *Oriental Commercial & Shipping Co., supra,* 609 F.Supp. at 79.

7. Affidavit of Joseph A. Carannante, sworn to June 10, 1988, at ¶ 7.

defendants assert that arbitration agreements may be enforced against non-signatories, the very different fact patterns of the cases relied on by defendants illustrate that enforcement of unsigned arbitration agreements is the exception, not the rule.

*McAllister Brothers, Inc. v. A & S Transportation Co.*[8] indicated that an arbitration .agreement could be enforced against two companies affiliated with the signatory, even though the affiliates had not signed the agreement. The decision was premised, however, on the express language of the contract which purported to bind "affiliates," "subsidiaries," and "all other companies of substantially the same stock ownership" as the signatories.[9] Moreover, despite the breadth of the contract language, *McAllister Brothers* remanded the action for trial on the issue of whether the affiliates were bound by the arbitration agreement.[10] In *Genesco, Inc. v. T. Kakiuchi & Co.*,[11] the parties had an ongoing business relationship involving a series of written orders and confirmations. The arbitration clause in the confirmation forms was held binding on the plaintiff, even though some of the forms were unsigned, based on plaintiff's previous express assent to the terms of the confirmation forms and the longstanding nature of the relationship.[12] *Blatt v. Shearson Lehman/American Express, Inc.*[13] enforced an arbitration agreement against the non-signing plaintiff because she had accepted the benefits of a joint account with defendant with full knowledge that her husband had forged her signature. Finally, the plaintiff in *Starkman v. Seroussi*[14] contended that the arbitration agreement was not enforceable because *defendant* had not signed it. None of the factors in these cases which led to the enforcement of the unsigned arbitration agreements are present here. Indeed, the relevant contract principles support construing the standard form customer's agreement against its drafter, SLB.[15]

Accordingly, defendants' motion to stay this action and to compel arbitration is denied in all respects.

So ordered.

---

8. 621 F.2d 519 (2d Cir.1980).

9. *Id.* at 523.

10. *Id.* at 523–24.

11. 815 F.2d 840 (2d Cir.1987).

12. *Id.* at 845–46.

13. CCH Federal Securities 1986–87 Transfer Binder ¶ 92,976 (S.D.N.Y.1986) [available on WESTLAW, 1986 WL 12721].

14. 377 F.Supp. 518 (S.D.N.Y.1974).

15. *Westchester Resco Co. v. New England Reinsurance Corp.*, 818 F.2d 2, 3 (2d Cir.1987) (ambiguity in form contract should be construed against drafting party).